# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued May 2, 2008        Decided July 15, 2008

No. 06-3146

UNITED STATES OF AMERICA,
APPELLEE

v.

DWAYNE CASSELL,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 00cr00270-01)

---

*Mitchell M. Seltzer*, appointed by the Court, argued the cause and filed the briefs for appellant.

*Katherine M. Kelly*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *Roy W. McLeese III* and *Elizabeth Trosman*, Assistant U.S. Attorneys.

Before: TATEL, GARLAND, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

2

GARLAND, *Circuit Judge*: A jury convicted Dwayne Cassell of several drug and gun crimes, including possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). We affirmed Cassell's convictions on direct appeal, and he now mounts a collateral challenge pursuant to 28 U.S.C. § 2255, alleging that his trial was subject to a host of errors by his counsel, the prosecutor, and the court. We reject all of Cassell's allegations for the reasons set forth in the district court's careful, detailed opinion. We address only one of those allegations in this opinion: Cassell's claim that his trial counsel was constitutionally ineffective for failing to insist that the judge instruct the jury that possession of a "semiautomatic assault weapon" was an element of a separate offense under 18 U.S.C. § 924(c)(1) that the jury had to find beyond a reasonable doubt. We consider this issue in depth not because we disagree with the district court's judgment, but because we think it important to have a circuit precedent on the question. We conclude that the type of firearm possessed by the defendant was a sentencing factor, which the district court properly found without a jury under a preponderance-of-the-evidence standard.

I

On July 13, 2000, District of Columbia police officers executed a search warrant at a house located at 1129 Trinidad Avenue in Northeast Washington, D.C. Lawrence Hart owned the house and shared it with his nephew, appellant Cassell. During the search, the officers found guns, drugs, and drug paraphernalia.

In a bedroom that Hart later identified as belonging to Cassell, the police found a blue duffel bag containing two loaded firearms: a Colt AR-15 semiautomatic rifle and a Cobray 9-mm semiautomatic pistol. They also found an identification card bearing Cassell's name and photograph as well as the 1129

Trinidad Avenue address, an envelope addressed to Cassell, and $3154 in cash. In Hart's own bedroom the police found a loaded .32 caliber revolver, .22 caliber ammunition, marijuana, and additional cash, all of which Hart admitted belonged to him.

On the rear porch of the house, in a box on a chair, the officers recovered a receipt for the purchase of a car in Cassell's name, a magazine for a semiautomatic handgun, and a scale. On the seat of the chair was a plate covered with white, rocklike crumbs that field-tested positive for cocaine. The plate bore Cassell's right thumbprint.

In the dining room of the house was a table with a "hutch" on top of it. Inside the hutch, the police found a brown bag containing 71 ziplock bags of cocaine base, one round of 9-mm ammunition, and one round of .30 caliber ammunition. On the hutch, they found a court document and a telephone bill in Cassell's name. The house's bathroom, hallway, and kitchen yielded additional cocaine base, marijuana, and ammunition.

On August 24, 2000, a grand jury charged Cassell with five crimes: (1) possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii); (2) possession with intent to distribute cocaine base within 1000 feet of a school, in violation of 21 U.S.C. § 860(a); (3) using, carrying and possessing a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1) and (c)(1)(B)(i); (4) unlawful possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and (5) possession of marijuana, in violation of 21 U.S.C. § 844(a). Cassell went to trial on December 4, 2000. Four days later, the jury acquitted him of marijuana possession, but convicted him on all of the other charges. On March 7, 2001, the district court sentenced Cassell to 288 months' incarceration and 10 years of supervised release. This court

affirmed the conviction on June 11, 2002. *See United States v. Cassell*, 292 F.3d 788 (D.C. Cir. 2002).

On September 9, 2003, Cassell filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on numerous grounds, including the alleged ineffectiveness of both his trial and appellate counsel. In a memorandum opinion and order, the district court denied Cassell's motion. *Cassell v. United States*, 2006 WL 2051371 (D.D.C. July 19, 2006). Cassell then moved for a certificate of appealability under 28 U.S.C. § 2253, which the district court granted. Thereafter, Cassell filed the instant appeal.

Cassell's appeal once again raises multiple objections to his conviction. We reject all of them for the reasons set forth in the district court's opinion. In this opinion, we consider only his claim that trial counsel was ineffective in failing to request a jury instruction that classified the term "semiautomatic assault weapon" as an element of a separate offense under 18 U.S.C. § 924(c)(1).

II

A petitioner may bring a claim of ineffective assistance of counsel "in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *see United States v. Toms*, 396 F.3d 427, 432 (D.C. Cir. 2005). To evaluate such a claim, we turn to the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). To prove constitutionally defective representation, the defendant must show (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. "The latter prong requires the defendant to demonstrate that 'there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.'" *United States v. Eli*, 379 F.3d 1016, 1019 (D.C. Cir. 2004) (quoting *Strickland*, 466 U.S. at 694).

Count Three of the indictment charged Cassell with using and carrying a firearm during and in relation to a drug trafficking offense, and with possessing a firearm in furtherance of such an offense, in violation of 18 U.S.C. § 924(c)(1). The count was submitted to the jury on the possession-in-furtherance theory only, and the judge instructed that the offense had two elements: "that the defendant possessed the firearm," and "that the defendant possessed the firearm in furtherance of [a] drug trafficking offense." Trial Tr. 572 (Dec. 7, 2000). The court defined the term "firearm" as "any weapon which . . . expel[s] a projectile by the action of an explosive." *Id*. at 572-73. It neither mentioned nor defined the term "assault weapon." Cassell's counsel agreed to those instructions and did not object when they were given. *See* Appellant's Br. 37.

After the jury convicted Cassell on Count Three, the district court determined that the firearm that Cassell possessed -- a Colt AR-15 semiautomatic rifle -- was a "semiautomatic assault weapon" for purposes of § 924(c)(1). The relevant provision of that subsection states: "(B) If the firearm possessed by a person convicted of a violation of this subsection -- (i) is a . . . semiautomatic assault weapon, the person shall be sentenced to a term of imprisonment of not less than 10 years." 18 U.S.C. § 924(c)(1)(B)(i) (2000).[1]

---

[1]The semiautomatic assault weapon provision of § 924(c)(1)(B)(i) expired on September 13, 2004, well after Cassell's offense and subsequent conviction. *See* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 110105(2), 108 Stat. 1796, 2000 (1994); 18 U.S.C. § 921 note. In all other relevant respects the current version of the statute is identical to the version at

Cassell contends that § 924(c)(1)(B) defines a separate offense, of which the type of firearm the defendant possessed is an element, and that his jury should have been so charged. Instead, and without objection by his counsel, the district court treated the type of firearm as a sentencing factor that the court could itself determine based on a preponderance of the evidence. Cassell argues that his counsel's failure to object constituted constitutionally deficient performance under the first prong of *Strickland*. He further maintains that this deficient performance prejudiced him under *Strickland*'s second prong, because it led the court to sentence him to a mandatory minimum sentence of 10 years, rather than the 5-year mandatory minimum applicable to an unspecified type of firearm. *Compare* 18 U.S.C. § 924(c)(1)(A)(i) (imposing a sentence "of not less than 5 years"), *with* § 924(c)(1)(B)(i) (imposing a sentence "of not less than 10 years").

For the reasons discussed in Parts III and IV below, we conclude that Cassell's argument fails to satisfy either prong of *Strickland*. Counsel's failure to argue that the type of firearm was an element of the offense was not "deficient" because the type of firearm is not an element of a § 924(c)(1) offense. Moreover, even if it were an element and counsel were deficient for not raising the issue, Cassell cannot show that he was prejudiced by the court's failure to so charge the jury.

III

If the type of firearm possessed by the defendant constitutes an element of the § 924(c)(1) offense, then the question must be submitted to the jury and proven beyond a reasonable doubt. *Castillo v. United States*, 530 U.S. 120, 123 (2000). If it is a

---

issue in this case, and this opinion refers to those common provisions as the "current" version of the statute.

sentencing factor, however, the district judge may find it -- without a jury -- by a preponderance of the evidence. *Id.* at 123-24. Section 924(c)(1) provides, in relevant part:

(c)(1)(A) . . . [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime --

(i) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

*(B) If the firearm possessed by a person convicted of a violation of this subsection --*

*(i) is a* short-barreled rifle, short-barreled shotgun, or *semiautomatic assault weapon, the person shall be sentenced to a term of imprisonment of not less than 10 years*; or

(ii) is a machinegun . . . , the person shall be sentenced to a term of imprisonment of not less than 30 years.

(C) In the case of a second or subsequent conviction under this subsection, the person shall --

(i) be sentenced to a term of imprisonment of not less than 25 years; . . .

(D) Notwithstanding any other provision of law -- . . .

(ii) no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person . . . .

18 U.S.C. § 924(c) (2000) (emphasis added); *see supra* note 1. Two Supreme Court opinions light our path toward resolving whether the assault weapon provision is an element or a sentencing factor. We first describe those precedents and then apply them to the instant case.

## A

The first precedent is *Castillo v. United States*, 530 U.S. 120 (2000), in which the Court construed a previous version of § 924(c)(1). That version consisted of a single paragraph, which read in relevant part:

(c)(1) Whoever, during and in relation to any crime of violence . . . , uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence . . . , be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle [or a] short-barreled shotgun to imprisonment for ten years, *and if the firearm is a machinegun, . . . to imprisonment for thirty years*. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years . . . . Notwithstanding any other provision of law, . . . the term of imprisonment imposed under

> this subsection [shall not] run concurrently with any other term of imprisonment . . . . No person sentenced under this subsection shall be eligible for parole . . . .

18 U.S.C. § 924(c)(1) (Supp. V 1988) (emphasis added). A jury determined that the *Castillo* defendants had violated § 924(c)(1) by knowingly using or carrying firearms, and the judge found that the firearms at issue included machineguns. The judge then imposed the statute's mandatory 30-year prison term. The question before the Supreme Court was whether Congress intended each reference to a firearm type in § 924(c)(1) to define a distinct crime or merely to indicate a sentencing factor. *Castillo*, 530 U.S. at 123. After considering the statute's "language, structure, context, history, and such other factors as typically help courts determine a statute's objectives," the Court concluded that the references to firearm type defined separate crimes. *Id*. at 124.

The Court focused first on the statutory language, the relevant sentence of which, at the time, read as follows: "Whoever, during and in relation to any crime of violence . . . , uses or carries a firearm, shall . . . be sentenced to imprisonment for five years, and if the firearm is a . . . machinegun, . . . to imprisonment for thirty years." 18 U.S.C. § 924(c)(1) (Supp. V 1988). The Court found that language "neutral." *Castillo*, 530 U.S. at 124. It could be read, the Court said, "as setting forth two basic elements of the offense" -- "uses or carries a firearm" and "during and in relation to a crime of violence." *Id*. On that reading, the provision's subsequent reference to "machinegun" would "merely increas[e] a defendant's sentence in relevant cases." *Id*. "But, with equal ease," the Court thought, the phrase could be read as "creating a different crime containing one new element." *Id*.

Although the Court read the statute's language as neutral, it found that "its overall structure strongly favors the 'new crime' interpretation." *Id*. "Congress," the Court observed, "placed the element 'uses or carries a firearm' and the word 'machinegun' in a single sentence, not broken up with dashes or separated into subsections." *Id*. at 124-25. Moreover, the following three sentences "refer directly to sentencing: the first to recidivism, the second to concurrent sentences, the third to parole." *Id*. at 125. The Court found that "[t]hese structural features strongly suggest that the basic job of the entire first sentence is the definition of crimes and the role of the remaining three is the description of factors (such as recidivism) that ordinarily pertain only to sentencing." *Id*.

Important for Cassell's case, the Court noted a "structural circumstance[] that suggest[ed] a contrary interpretation." *Id*. That circumstance was Congress' 1998 reenactment of § 924(c)(1), which "separat[ed] different parts of the first sentence . . . into different subsections." *Id*. This "postenactment statutory restructuring," however, could not help the Court "determine what Congress intended at the time it enacted the earlier statutory provision." *Id*.

The Court then addressed the remaining considerations that it had identified. It found that courts have not traditionally regarded firearm types as sentencing factors; that asking a jury to decide the type of firearm would rarely complicate a trial; that the legislative history was not helpful; and that the length of the added mandatory sentence that turned on the presence of a machinegun weighed in favor of treating the provision as referring to an element. Summarizing its entire analysis, the Court concluded "that Congress intended the firearm type-related words it used in § 924(c)(1) to refer to an element of a separate, aggravated crime." *Id*. at 131.

The second governing precedent is *Harris v. United States*, 536 U.S. 545 (2002), in which the Court interpreted the version of § 924(c)(1) that applies to Cassell's case. Harris was indicted and convicted of knowingly carrying a firearm during and in relation to a drug trafficking crime, in violation of § 924(c)(1)(A). At sentencing, the district court found by a preponderance of the evidence that Harris had brandished the firearm in question, and it sentenced him to the mandatory minimum sentence of seven years required by § 924(c)(1)(A)(ii). Harris objected on two grounds: (1) that as a matter of statutory interpretation, brandishing is an element of a separate offense and not merely a sentencing factor; and (2) that if the statute makes brandishing a sentencing factor, then the statute is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). On review, the Supreme Court rejected both claims.

On the first issue, the Court found -- as it had with respect to the machinegun provision at issue in *Castillo* -- that the statutory language did not resolve the question. *Harris*, 536 U.S. at 552. This time, however, it found that "the structure of the [brandishing] prohibition suggests" that it is a sentencing factor. *Id.* Quoting *Castillo*, the Court noted that "[f]ederal laws usually list all offense elements 'in a single sentence' and separate the sentencing factors 'into subsections.'" *Id.* It then described the structure of the version of the statute relevant to Harris' (and Cassell's) case:

> Here, § 924(c)(1)(A) begins with a lengthy principal paragraph listing the elements of a complete crime -- "the basic federal offense of using or carrying a gun during and in relation to" a violent crime or drug offense. Toward the end of the paragraph is "the word 'shall,' which often divides offense-defining provisions from those that specify sentences." And following

> "shall" are the separate subsections, which explain how defendants are to "be sentenced." Subsection (i) sets a catchall minimum and "certainly adds no further element." Subsections (ii) and (iii), in turn, increase the minimum penalty if certain facts are present, and those subsections do not repeat the elements from the principal paragraph.

*Id*. at 552-53 (citations omitted) (quoting *Castillo*, 530 U.S. at 124, and *Jones v. United States*, 526 U.S. 227, 233 (1999)).

"When a statute has this sort of structure," the Court said, "we can presume that its principal paragraph defines a single crime and its subsections identify sentencing factors." *Id*. at 553. The Court did not find anything to overcome this presumption. It noted that there was no federal tradition of treating brandishing as an offense element. *Id*. And it further found that, unlike the provision in *Castillo*, the "provisions before us . . . have an effect on the defendant's sentence that is more consistent with traditional understandings about how sentencing factors operate; the required findings constrain, rather than extend, the sentencing judge's discretion." *Id*. at 554. The Court explained this point as follows:

> Section 924(c)(1)(A) does not authorize the judge to impose "steeply higher penalties" -- or higher penalties at all -- once the facts in question are found. Since the subsections alter only the minimum, the judge may impose a sentence well in excess of seven years, whether or not the defendant brandished the firearm. The incremental changes in the minimum -- from 5 years, to 7, to 10 -- are precisely what one would expect to see in provisions meant to identify matters for the sentencing judge's consideration.

*Id*. (quoting *Jones*, 526 U.S. at 233).

Finally, the Court addressed petitioner Harris' contention that the canon of constitutional avoidance counseled against the single-offense interpretation. *Id*. at 554-55. The constitutional question, Harris argued, was raised by the Court's decision in *Apprendi*, which held that "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum,' whether the statute calls it an element or a sentencing factor, 'must be submitted to a jury, and proved beyond a reasonable doubt.'" *Id*. at 550 (quoting *Apprendi*, 530 U.S. at 490). As the Court noted, however, the relevant version of § 924(c)(1)(A) does not increase the penalty beyond the statutory maximum once specified facts (like brandishing) are found; such findings "alter only the minimum" sentence. *Id*. at 554. Nonetheless, Harris maintained that it was "at least an open question . . . whether the Fifth and Sixth Amendments require every fact increasing a federal defendant's minimum sentence to be alleged in the indictment, submitted to the jury, and proved beyond a reasonable doubt," and he argued that to "avoid resolving that question (and possibly invalidating the statute), . . . [the Court] should read § 924(c)(1)(A) as making brandishing an element of an aggravated federal crime." *Id*. at 555.

The Court was unpersuaded: The "petitioner's proposed rule -- that the Constitution requires any fact increasing the statutory minimum sentence to be accorded the safeguards assigned to elements -- was rejected 16 years ago in *McMillan*." *Id*. (citing *McMillan v. Pennsylvania*, 477 U.S. 79 (1986)). In *McMillan*, the Court "sustained a statute that increased the minimum penalty for a crime, though not beyond the statutory maximum, when the sentencing judge found, by a preponderance of the evidence, that the defendant had possessed a firearm." *Harris*, 536 U.S. at 550. Petitioner Harris suggested

14

that *Apprendi* and related cases had "cast doubt on *McMillan*'s viability," and that the Court "should construe the problem out of the statute" to "avoid deciding whether *McMillan* must be overruled." *Id*. at 555. But the Court rejected the suggestion that it "use the canon to avoid overruling" its own precedent, particularly since "*McMillan* was in place when § 924(c)(1)(A) was enacted." *Id*. at 556. Finding that "the avoidance canon poses no obstacle and the interpretive circumstances point in a common direction," the Court held that, "as a matter of statutory interpretation, § 924(c)(1)(A) defines a single offense" and "regards brandishing and discharging as sentencing factors to be found by the judge, not offense elements to be found by the jury." *Id*. In a subsequent part of the opinion, the Court reaffirmed *McMillan* and concluded that § 924(c)(1)(A)(ii) is constitutional. *Id*. at 568.

B

Having laid out the governing precedents in some detail, we find the resolution of Cassell's case straightforward. Unlike the structure of the version of § 924(c)(1) in effect at the time of *Castillo*, the structure of the version relevant here strongly indicates that possession of a particular type of firearm is a sentencing factor rather than an offense element. As the *Castillo* Court itself noted, the statute no longer has "the element 'uses or carries a firearm' and the word 'machinegun' in a single sentence, not broken up with dashes or separated into subsections." 530 U.S. at 125. Instead, Congress has now "separat[ed] different parts of the first sentence (and others) into different subsections." *Id*. And as *Castillo* further noted, this "structural circumstance[] . . . suggest[s] a contrary interpretation" to the one it reached in that case. *Id*.

The current statute, as described in *Harris*, "begins with a lengthy principal paragraph listing the elements of a complete

crime -- 'the basic federal offense of using or carrying a gun during and in relation to' a violent crime or drug offense." *Harris*, 536 U.S. at 552 (quoting *Castillo*, 530 U.S. at 124). Following this paragraph are "separate subsections" that set increasing minimum penalties "if certain facts [i.e., brandishing or discharging] are present, and those subsections do not repeat the elements from the principal paragraph." *Id*. at 552-53 (referencing § 924(c)(1)(A)(i), (ii), and (iii)). There then follows a second group of subsections that again set increasing minimum penalties if certain facts are present, this time facts relating to the type of firearm involved. *See* § 924(c)(1)(B)(i), (ii). And as with the brandishing and discharging subsections, the subsections referencing firearm type "do not repeat the elements from the principal paragraph." *Harris*, 530 U.S. at 553. Consistent with the Court's instruction, "[w]hen a statute has this sort of structure, we can presume that its principal paragraph defines a single crime and its subsections identify sentencing factors." *Id*.

Turning to the remaining interpretive factors identified in *Castillo*, we note that the legislative history is again inconclusive, and that two of *Castillo*'s other observations -- that courts have not traditionally treated firearm type as a sentencing factor and that asking a jury to decide the type of firearm would rarely complicate a trial -- again cut against the sentencing-factor interpretation. More significant, however, is the fact that the current version of § 924(c)(1) -- unlike that at issue in *Castillo*, but like that in *Harris* -- does not increase the statutory maximum sentence. Rather, the firearm-type provisions "have an effect on the defendant's sentence that is more consistent with traditional understandings about how sentencing factors operate; the required findings constrain, rather than extend, the sentencing judge's discretion" by "alter[ing] only the minimum [sentence that] the judge may impose." *Harris*, 530 U.S. at 554.

Finally, most significant is the fact that the language of §
924(c)(1)(B) -- unlike the pre-1998 text examined in *Castillo* or
the text of § 924(c)(1)(A)(ii) examined in *Harris* -- is not
"neutral" on the issue before us.  Section 924(c)(1)(B) states:
"If the firearm possessed by a person *convicted of a violation* of
this subsection -- (i) is a short-barreled rifle, short-barreled
shotgun, or semiautomatic assault weapon, the person shall be
sentenced to a term of imprisonment of not less than 10 years."
18 U.S.C. § 924(c)(1)(B) (emphasis added).  The use of the
phrase "convicted of a violation" indicates that the provision is
to be applied only after a conviction and, hence, only at
sentencing.  The referenced "violation" is for "'the basic federal
offense of using or carrying a gun during and in relation to' a
violent crime or drug offense."  *Harris*, 536 U.S. at 552 (quoting
*Castillo*, 530 U.S. at 124).  And, as *Harris* makes clear, all of
the elements of that crime are contained in the "lengthy principal
paragraph" of § 924(c)(1)(A).  *Id.*

"Against the single-offense interpretation to which these
considerations point," *id.* at 554-55, Cassell -- like the defendant
in *Harris* -- argues that *Apprendi* counsels a different outcome.
But the Supreme Court rejected that precise argument in *Harris*,
and so do we.  Nor is there anything in the Court's post-*Harris*
decisions in *Blakely v. Washington*, 542 U.S. 296 (2004), and
*United States v. Booker*, 543 U.S. 220 (2005) -- two cases that
applied *Apprendi* to sentencing guidelines -- that would require
a different result.  *See Blakely*, 542 U.S. at 304-05
(distinguishing *McMillan* because the Washington state
guidelines did not merely impose statutory minima).  We
therefore conclude that, unlike in the version of the statute
examined in *Castillo*, in the current version "Congress intended
the firearm type-related words it used" in § 924(c)(1)(B) to refer
to sentencing factors rather than offense elements.  *Castillo*, 530

U.S. at 131. In so doing, we join all but one of the other circuits that have considered the question.[2]

Because the district court properly treated Cassell's possession of an assault weapon as a sentencing factor, his counsel was not deficient in failing to demand a jury instruction on the issue. Accordingly, Cassell cannot satisfy the first prong of the *Strickland* test for ineffective assistance of counsel.

## IV

Even if possession of a semiautomatic assault weapon were an element of the § 924(c)(1) offense, Cassell's ineffective assistance claim would not succeed because he cannot show that counsel's failure to demand a jury instruction on the issue caused him prejudice -- as required by *Strickland*'s second prong. There is, in short, no "reasonable probability" that, if the court had left the question of Cassell's possession of an assault weapon to the jury, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The Supreme Court's opinion in *Neder v. United States*, 527 U.S. 1 (1999), makes this conclusion inescapable. In *Neder*, a district court wrongly determined that the materiality of false statements was not an element of tax fraud that had to be

---

[2]*See United States v. Harrison*, 272 F.3d 220 (4th Cir. 2001); *United States v. Barton*, 257 F.3d 433 (5th Cir. 2001); *United States v. Sandoval*, 241 F.3d 549 (7th Cir. 2001); *United States v. Gamboa*, 439 F.3d 796 (8th Cir. 2006); *United States v. Avery*, 295 F.3d 1158 (10th Cir. 2002); *United States v. Ciszkowski*, 492 F.3d 1264 (11th Cir. 2007). *But see United States v. Harris*, 397 F.3d 404 (6th Cir. 2005).

submitted to the jury, and instead decided the issue on its own. Applying the harmless error standard of review -- a standard more favorable to the defendant than the prejudice prong of *Strickland*, *see United States v. Saro*, 24 F.3d 283, 286-87 (D.C. Cir. 1994) -- the Supreme Court found the absence of a jury instruction harmless. It did so on the ground that the government's trial evidence, which showed that the defendant had failed to report over $5 million in income, "incontrovertibly establishe[d] that [his] false statements were material to a determination of his income tax liability." *Neder*, 527 U.S. at 16. No jury, the Court said, "could reasonably [have found] that Neder's failure to report substantial amounts of income on his tax returns was not a 'material matter.'" *Id.*

The same is true with respect to Cassell's possession of an assault weapon. At trial, a police officer testified that during the search of the Trinidad Avenue house, the police found a blue duffel bag in Cassell's bedroom, at the foot of his bed. The officer testified that the bag contained two firearms: a Colt AR-15 semiautomatic rifle, and a Cobray 9-mm semiautomatic pistol. A Special Agent of the Bureau of Alcohol, Tobacco, and Firearms also identified the rifle as a Colt AR-15. Cassell has not disputed this identification, nor suggested that he could. At the time of Cassell's offense and trial, the statute defined "semiautomatic assault weapon" to include a "Colt AR-15," *see* 18 U.S.C. § 921(a)(30)(A)(iv) (2000), and the government was certainly entitled to a jury instruction to that effect. Accordingly, the trial evidence "incontrovertibly establishe[d]," *Neder*, 527 U.S. at 16, that one of the weapons in the bag was a semiautomatic assault weapon.

The only remaining question is whether there is any reasonable probability that the jury could have found that Cassell did not possess the AR-15. Count Three of the indictment charged him with possessing the AR-15 and the

Cobray pistol in furtherance of a drug trafficking offense, and those were the only weapons the government contended he possessed. *See* Trial Tr. 178, 184-85 (Dec. 5, 2000) (opening argument); Trial Tr. 584, 608 (Dec. 7, 2000) (closing argument). The court instructed the jury that, to convict Cassell on Count Three, it had to find that he possessed "a" firearm, Trial Tr. 572 (Dec. 7, 2000), and the verdict form makes clear that the jury so found, *see* Verdict Form at 2. There is thus no doubt that the jury determined that Cassell possessed at least one of the two weapons. And because both guns were in the same bag, and Cassell has never offered any scenario under which the jury could have found that he possessed one gun but not the other, there is no reasonable probability that the jury would have acquitted Cassell of possessing the AR-15 semiautomatic assault weapon in furtherance of a drug trafficking offense.[3]

In sum, we conclude both that Cassell's counsel did not err in failing to request a jury instruction that firearm type was an offense element, and that, in any event, Cassell was not prejudiced by the absence of such an instruction. Cassell thus

---

[3]*Cf. United States v. Johnson*, 331 F.3d 962, 969 (D.C. Cir. 2003) (ruling, in a case in which the evidence showed that the defendant had tossed away two bags of drugs that together held more than 50 grams of cocaine base, that there was no plain error in the court's failure to instruct the jury regarding drug quantity because the defendant proffered "no scenario under which [the jury] could have convicted him of unlawful possession with intent to distribute cocaine base, yet found that the quantity involved was less than 50 grams"); *United States v. Webb*, 255 F.3d 890, 901 (D.C. Cir. 2001) (finding no plain error in the failure to instruct the jury on the issue of drug quantity, where the defendant "offer[ed] no scenario under which the jury could have convicted him of the [drug] transactions, yet rationally found that they involved different quantities than those testified to by the government chemist").

cannot satisfy either prong of *Strickland*'s two-prong test, and we must deny his claim of ineffective assistance of counsel.

V

For the foregoing reasons, the judgment of the district court is, in all respects,

*Affirmed*.