# United States Court of Appeals
## For the First Circuit

No. 21-1699

UNITED STATES OF AMERICA,

Appellee,

v.

LUIS O. PÉREZ-GREAUX, T/N LUIS ORLANDO PÉREZ-GREAX,
Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Gelpí, Thompson, and Montecalvo,
Circuit Judges.

Kevin E. Lerman, Research & Writing Attorney, with whom Eric Alexander Vos, Federal Public Defender, and Franco L. Pérez-Redondo, Assistant Federal Public Defender, were on brief, for appellant.

David C. Bornstein, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, were on brief, for appellee.

September 28, 2023

**GELPÍ**, <u>Circuit Judge</u>.

> The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.[1]

Defendant-Appellant Luis Orlando Pérez-Greaux ("Pérez-Greaux") was convicted of (1) possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B); (2) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and (3) possession of a machinegun in furtherance of a drug trafficking crime, in violation of § 924(c)(1)(A) and § 924(c)(1)(B)(ii), which carries a mandatory minimum sentence of thirty years imprisonment. At trial, the district court instructed the jury, over Pérez-Greaux's objection, that, to convict Pérez-Greaux of § 924(c)(1)(B)(ii), the government need not prove beyond a reasonable doubt that Pérez-Greaux <u>knew</u> that the firearm he possessed had the characteristics of a machinegun, rather the government only need prove that the firearm was in fact a machinegun.

Pérez-Greaux appeals his two firearm convictions, arguing that the district court improperly denied his Federal Rule

---

[1] <u>Morissette</u> v. <u>United States</u>, 342 U.S. 246, 250 (1952).

of Criminal Procedure 29 ("Rule 29") motion for acquittal on each of these counts because there was (1) insufficient evidence at trial that the firearm he possessed was truly possessed "in furtherance of" his drug trafficking offense and (2) insufficient evidence that he knew the firearm he possessed was a machinegun. In the alternative, he requests a new trial on the basis that the district court (1) improperly instructed the jury that the government was not required to prove that Pérez-Greaux knew the firearm he possessed was a machinegun, (2) made a slew of alleged trial errors that he contends infected his right to a fair trial, and (3) erred by denying his request for a Franks hearing. While we rule against Pérez-Greaux's challenge to the sufficiency of the evidence and claims of alleged pretrial and trial error, we conclude, in a case of first impression, that the jury should have been instructed about Pérez-Greaux's knowledge of the firearm's characteristics. Thus, we vacate Pérez-Greaux's conviction for possession of a machinegun in furtherance of a drug trafficking crime and remand for a new trial as to that count.

## I.  Background

Because this case comes to us on a unique posture -- to review a Rule 29 motion for sufficiency of the evidence and a motion for a new trial based on claims of prejudicial error as a result of faulty jury instructions -- we recount the facts only as

necessary to frame the issues on appeal.[2]  Burgos-Montes, 786 F.3d at 99.

According to testimony at trial, on June 1, 2018, Puerto Rico Police Department ("PRPD") Agent Jose Rivera Vélez ("Agent Rivera") was surveilling Pérez-Greaux's residence, based on a tip that he had received from a confidential informant, who had previously supplied him information, when he observed Pérez-Greaux walk out of his home "carrying a black pistol around his waist." After consulting police records, Agent Rivera learned that Pérez-Greaux did not have a license to carry a pistol and requested a warrant to search his residence, which was issued.

On June 5, 2018, PRPD officers and Homeland Security Investigations ("HSI") agents executed the search warrant of Pérez-Greaux's residence in Arecibo, Puerto Rico, and, upon their arrival, found Pérez-Greaux outside. When PRPD Agent Carlos Pérez-Carrasco ("Agent Pérez-Carrasco") informed Pérez-Greaux that they had a search warrant, Pérez-Greaux responded that he did not want his family harmed and would hand over what was inside. Thereafter, Pérez-Greaux led officers to a locked safe in his

_____

[2] We do so because we cannot simultaneously recount the facts in the light most favorable to the verdict or district court's ruling -- as would be required by a Rule 29 motion -- and in a "balanced" manner -- as would be required when we are confronted with claims of prejudicial error. United States v. Burgos-Montes, 786 F.3d 92, 99 (1st Cir. 2015). Notwithstanding the limited facts discussed here, we supply additional key facts as needed when we discuss each of Pérez-Greaux's claims.

bedroom, which contained three kilograms of cocaine, a digital scale, and other personal belongings, including firearm periodicals. He then led them to his children's bedroom in the adjoining room, which he said contained a firearm. Indeed, Agent Pérez-Carrasco, who stood at 5'6", had little difficulty reaching a plastic bag, on the top shelf of the closet, containing a .9mm Glock pistol (wrapped in a rag, inside paper bags), magazines, and separately packed bullets.

Pérez-Greaux was questioned by HSI Special Agent Juan Miranda ("Agent Miranda") at the Arecibo Drug Unit in the Municipality of Camuy for around two hours. According to Agent Miranda's trial testimony, Pérez-Greaux stated that he was storing the cocaine for a drug supplier, alias "Alex," who he knew from Rochester, New York. Pérez-Greaux also disclosed that he had been working as a drug trafficker since March or April 2018 whereby he would wrap cocaine with carbon paper, vacuum seal it, and box it, along with toys and other miscellaneous items, for shipping to the continental United States via the United States Postal Service ("USPS"). At trial, Agent Miranda recalled seeing a box in Pérez-Greaux's residence addressed to "Alex Ortiz" in Rochester, New York. As to the firearm, Pérez-Greaux gave Agent Miranda two versions of how he obtained it. First, he said that he had received the firearm and cocaine from Alex, several days before the search, at a beach club in Isla Verde, Puerto Rico. Alex had referred to

the firearm as "a short one with a couple of beans," and told him to "[j]ust hold on to that while I come back." Later on, in the same interview, Pérez-Greaux relayed a different version about the firearm, telling Agent Miranda that he had received the firearm from an "extremely dangerous person" that he had known for eight years named Marcos, or Marquito Santiago, and that he had no idea that the firearm operated as a fully automatic handgun.

An operative superseding indictment charged Pérez-Greaux with five counts: (1) possession of a firearm in furtherance of a drug trafficking crime; (2) possession of a machinegun in furtherance of a drug trafficking crime; (3) illegal possession of a machinegun; (4) possession with the intent to distribute controlled substances; and (5) possession of a firearm by a convicted felon. Prior to trial, the government requested the dismissal of Counts Three and Five.

## A. The Trial

On October 15, 2019, Pérez-Greaux's four-day jury trial commenced on the three remaining counts.

Trial testimony revealed that, during the search of Pérez-Greaux's residence, law enforcement also recovered a gun holster, postage-stamped boxes from the children's bedroom closet, $600, and five cellphones from Pérez-Greaux's side table. Over Pérez-Greaux's objections, the district court allowed the government to introduce photographs and screenshots extracted from

the five cellphones in the days before trial, using state-of-the-art technology. The extraction revealed images, pre-dating June 5, 2018, of shipment receipts, toys in plastic bags, and vacuum sealed bricks (of what appeared to be controlled substances) and screenshots of package tracking information, money transfers, and text messages discussing pricing. Matthew Johnson, the computer forensic agent who performed the extraction, testified that he could not determine who had accessed the cellphones, captured the images, or deleted them.

At trial, Jeffrey T. Browder, a firearms expert, testified that the recovered Glock pistol had been altered to include an external, automatic sear that caused it to function as a machinegun. He noted that he was able to identify the machinegun alteration because of his training and expertise but confirmed it by test firing the weapon.

At the conclusion of the government's case-in-chief, Pérez-Greaux moved for judgment of acquittal pursuant to Rule 29[3] on the grounds that the government had failed to put forth sufficient evidence of possession with intent to distribute a controlled substance, failed to prove the "in furtherance of" element of the firearm offenses, and failed to offer sufficient

---

[3] Federal Rule of Criminal Procedure 29(a) provides that "[t]he court . . . must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."

evidence that he knew that the weapon in his home was a machinegun. The district court denied the motion.

As previewed and will soon be discussed in greater detail, the district court also denied Pérez-Greaux's request that the jury be instructed that, to convict him of possession of a machinegun in furtherance of a drug trafficking crime, the government had to prove he "had knowledge of the characteristics that made the weapon a machinegun." The district court concluded, as a matter of law, that § 924(c)(1)(B)(ii) does not include "an implicit subjective mens rea requirement."

Ultimately, the jury convicted Pérez-Greaux on all three counts tried.

## B. Renewed Rule 29 Motion

Following the verdict, Pérez-Greaux renewed his Rule 29 motion, which the district court again denied, finding that the evidence presented at trial sufficiently supported the convictions. In its written decision, the district court first held that, with respect to possession with intent to distribute cocaine, a reasonable juror could infer that Pérez-Greaux knowingly possessed a controlled substance after he led Agent Pérez-Carrasco to the safe in his bedroom and identified the substance in it as cocaine and that he had an intent to distribute those drugs given his admission of working as a drug trafficker and the presence of boxes, stamps, and shipping receipts in his

home.  United States v. Pérez-Greaux, 454 F. Supp. 3d 128, 136-37 (D.P.R. 2020).

As to possession of a firearm "in furtherance of" drug trafficking, the district court held that "objective factors," such as being seen with a weapon outside his home and keeping the weapon in close proximity to where he stored drugs in his home, "tip[ped] the scale" in favor of there being sufficient evidence that he possessed the firearm to protect the drugs.  Id. at 138, 140.  It also noted that a reasonable jury could have found that Pérez-Greaux furthered a drug trafficking crime when he transported the firearm and drugs back to his home in Arecibo from his meeting with Alex in Isla Verde.  Id. at 137-41.  Finally, as to possession of a machinegun in furtherance of drug trafficking, the district court, finding no circuit precedent directly on point, found that the jury instructions were proper, such that the defendant need not know the firearm was a machinegun for a conviction under § 924(c)(1)(B)(ii), and that there was sufficient evidence that Pérez-Greaux possessed a machinegun based on the firearms expert's identification of the weapon as a machinegun. Id. at 140-46.

Subsequently, the district court sentenced Pérez-Greaux to 438 months in prison, followed by five years of supervised release.  This appeal timely followed.

## II.  Discussion

On appeal, Pérez-Greaux only challenges his firearms convictions.  In addition to contesting the denial of his renewed Rule 29 motion and jury instruction requests, he asserts that the district court erred in three evidentiary rulings -- precluding defense witness testimony, precluding cross-examination of Agent Miranda on Pérez-Greaux's mens rea statements, and by admitting images extracted from cell phones in Pérez-Greaux's residence, along with opinion testimony that these materials evidenced specific prior illegal conduct -- all of which denied him the right to a fair trial, that prosecutorial misconduct in closing arguments violated his Fifth and Sixth Amendment rights, and that the district court erred in denying his request for a Franks hearing. Finally, he asserts that, cumulatively, these errors undermined his right to a fair trial.

While we ultimately conclude that there was sufficient evidence for a reasonable jury to convict Pérez-Greaux on both firearm counts, and thereby affirm the denial of his Rule 29 motion, we also conclude that the jury was improperly instructed as to the mens rea element of the machinegun crime.  For reasons we will explain forthwith, the government was required to prove, beyond a reasonable doubt, that Pérez-Greaux knew that the firearm he possessed had the characteristics of a machinegun.  We thus vacate his conviction for possession of a machinegun in furtherance

of a drug trafficking crime and remand for a new trial as to that count.

When a defendant raises both a challenge to a jury instruction and to the sufficiency of the evidence to support his conviction, we usually address the sufficiency of the evidence first, because if the defendant prevails on the insufficiency argument, then we need not explore any of the other trial errors raised.  See United States v. Godin, 534 F.3d 51, 61 (1st Cir. 2008).  "[O]nce the reviewing court has found the evidence legally insufficient" to support a conviction, "[t]he Double Jeopardy Clause precludes a second trial." United States v. Maldonado-Peña, 4 F.4th 1, 50 (1st Cir. 2021) (quoting United States v. Montijo-Maysonet, 974 F.3d 34, 41 (1st Cir. 2020)).  However, when (as here) the challenge to the jury instruction focuses on an allegedly missing element from the charge, we address that legal argument first.  See Godin, 534 F.3d at 56, 61.  If we agree with the defendant about the alleged instructional error, then we normally move on to the sufficiency arguments before determining whether the instructional error was harmless. Id. at 61.  As such, we begin our discussion with the alleged error in the jury instructions, then address the Rule 29 motion for sufficiency of the evidence, and finally dispense with the rest of Pérez-Greaux's claims, concluding that none of them warrant a new trial.

**A. JURY INSTRUCTIONS FOR POSSESSION OF A MACHINEGUN IN FURTHERANCE OF A DRUG TRAFFICKING CRIME, 18 U.S.C. § 924(c)(1)(B)(ii)**

We begin by addressing why the jury should have been instructed that the government needed to prove Pérez-Greaux had knowledge that the firearm in question had the characteristics of a machinegun in order to find him guilty of possessing a machinegun in furtherance of drug trafficking. In broad terms, Pérez-Greaux contends that the strong presumption in favor of finding scienter,[4] principles of proportional culpability, standards of statutory interpretation, and Supreme Court and First Circuit case law compel this conclusion. The government counters that the presumption in favor of scienter is inapplicable here, that the plain language of the statute does not contain a mens rea requirement, and that the case law that Pérez-Greaux cites to support his position is unavailing. We review the claim de novo, id. at 56, mindful that it is an issue of first impression in our circuit.

In 2010, the Supreme Court held that the machinegun provision of § 924(c)(1)(b)(ii) is an element of the § 924(c) offense, not just a factor to be considered at sentencing, but "expresse[d] no views on the point" whether a defendant "must be aware of the weapon's characteristics." United States v. O'Brien,

_____

[4] Scienter involves "the degree of knowledge necessary to make a person criminally responsible for his or her acts." Ruan v. United States, 142 S. Ct. 2370, 2377 (2022).

560 U.S. 218, 222, 235 (2010). Peeling back the layers of complexity, the question before us is simple: Did Congress intend to make a conviction for the possession of a machinegun under § 924(c)(1)(B)(ii) a strict liability crime? The D.C. and Eleventh Circuits are the only circuits that have considered the issue since O'Brien and, constrained by their own circuit precedent, both have answered yes. See United States v. Haile, 685 F.3d 1211, 1218 (11th Cir. 2012); United States v. Burwell, 642 F.3d 1062 (D.C. Cir. 2011), reh'g en banc granted, judgment vacated (Oct. 12, 2011), opinion reinstated and aff'd, 690 F.3d 500, 516 (D.C. Cir. 2012). Our review of the statute, and both Supreme Court and First Circuit case law, however, leads us to the opposite result.

Proof of mens rea "requires proof 'that the defendant know the facts that make his conduct illegal.'" United States v. Ford, 821 F.3d 63, 68 (1st Cir. 2016) (quoting Staples v. United States, 511 U.S. 600, 605 (1994)); id. at 70 ("Customarily, the mens rea element is satisfied if the defendant 'know[s] the facts that make his conduct fit the definition of the offense.'" (quoting Staples, 511 U.S. at 607 n.3) (alteration in original)). Whether § 924(c)(1)(B)(ii) requires that a defendant know that the firearm possessed has the characteristics of a machinegun is a question of statutory interpretation and, because "[t]he definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes," such an interpretation

- 13 -

requires an "inference of the intent of Congress." Staples, 511 U.S. at 604-05 (alteration in original) (first quoting Liparota v. United States, 471 U.S. 419, 424 (1985); and then quoting United States v. Balint, 258 U.S. 250, 253, (1922)). We thus begin, as always, with the language of the statute.

A "machinegun," as defined by § 921(a)(24), which borrows the definition of a machinegun from the National Firearms Act, is "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger."[5] 26 U.S.C. § 5845(b). In other words, "a fully automatic weapon [is one] that fires continuously with a single pull on the trigger" and stands in contrast to a semi-automatic firearm, which "chambers a new round automatically but requires a new pull on the trigger to fire." United States v. O'Brien, 542 F.3d 921, 922 n.1 (1st Cir. 2008), aff'd, 560 U.S. 218 (2010).

---

[5] The statute further provides that:

> The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b).

- 14 -

Turning to the text of § 924, we note that it is entitled "Penalties" and "is elaborate, lengthy and far from homogenous in character." Id. at 922. Section 924(c)(1)(A) provides for mandatory minimum sentences for any person who "uses or carries a firearm" "during and in relation to any crime of violence or drug trafficking crime" or any person who "possesses a firearm" "in furtherance of" a crime of violence or drug trafficking crime.[6]

---

[6] Section 924(c)(1)(A) and (B) are reprinted below:

> (c)(1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--
>     (i) be sentenced to a term of imprisonment of not less than 5 years;
>     (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>     (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.
>
> (B) If the firearm possessed by a person convicted of a violation of this subsection--
>     (i) is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, the person shall be sentenced

- 15 -

Subsection (i) provides for a mandatory sentence of at least five years for such an offense, and subsections (ii) and (iii), respectively, provide for seven years if the "firearm is brandished," and ten years if the "firearm is discharged." And § 924(c)(1)(B) further provides minimum sentences for possession of a firearm, a minimum of ten years if the firearm in question is a "short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon," and at least thirty years if it is a "machinegun or a destructive device[] or is equipped with a firearm silencer or firearm muffler." Id. § 924(c)(1)(B)(i), (ii).

The plain text before us then is silent as to mens rea. The government would have us conclude that without explicit mens rea there can be none, but by now it is well-established that "silence on this point by itself does not necessarily suggest that Congress intended to dispense with a conventional mens rea element." Staples, 511 U.S. at 605; see also Rehaif v. United States, 139 S. Ct. 2191, 2195 (2019) (stating that "the presumption in favor of scienter" applies "even when Congress does not specify

_____

> to a term of imprisonment of not less than 10 years; or
> (ii) is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, the person shall be sentenced to a term of imprisonment of not less than 30 years.

18 U.S.C. § 924.

- 16 -

any scienter in the statutory text," and "applies with equal or greater force when Congress includes a general scienter provision in the statute itself"); Elonis v. United States, 575 U.S. 723, 734 (2015) ("We have repeatedly held that 'mere omission from a criminal enactment of any mention of criminal intent' should not be read 'as dispensing with it.'" (quoting Morissette, 342 U.S. at 250)); Morissette, 342 U.S. at 263 ("We hold that mere omission from § 641 of any mention of intent will not be construed as eliminating that element from the crimes denounced."); United States v. X-Citement Video, Inc., 513 U.S. 64, 70 (1994) (interpreting a statute to include a scienter requirement even where "the most grammatical reading of the statute" did not support one); United States v. U.S. Gypsum Co., 438 U.S. 422, 438 (1978) ("Certainly far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement.").

***

Finding no explicit expression of congressional intent as to mens rea within the plain text of the statute, we would generally turn to legislative history and statutory structure to determine congressional intent, but, in this case, neither

provides guidance one way or another.[7]  As such, today's decision requires that we traverse the Supreme Court's treatment of mens rea to decipher whether statutes like the one before us should be construed as containing a presumption of mens rea.  While the Supreme Court's jurisprudence on the precise issue that we confront is unsettled, our decision, as we explain today, is in line with the Court's case law, as well as with the recognized principles of proportionality (given the thirty-year mandatory minimum imposed by the statute), which animates the Supreme Court's mens rea analysis.

There are a number of cases establishing that a presumption of mens rea underlies federal criminal statutes. Staples, 511 U.S. at 605 ("[T]he existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." (quoting U.S. Gypsum Co., 438 U.S. at 436)).  The Court explicitly addressed the presumption in Morissette where it considered a statute criminalizing the conversion of government property after Morissette took bomb

_____

[7]  The statute's legislative history does not appear instructive for the present case given that the one change made to the statute in 1998 was seemingly minimal.  See Castillo v. United States, 530 U.S. 120, 129-30 (2000) (detailing some of the legislative history of § 924(c)).  While the government offers that the statute's structure counsels against a finding of mens rea because certain other provisions of the statute do include an explicit mention of mens rea, we are not persuaded that we can end the inquiry here.

- 18 -

casings he believed had been abandoned from government property. 342 U.S. at 247-50. The Court applied the presumption that the statute contained a mens rea requirement and found that Morissette could not be punished because he did not <u>know</u> that the property belonged to the government, reasoning that failure to apply the presumption would "sweep out of all federal crimes, except when expressly preserved, the ancient requirement of a culpable state of mind." <u>Id.</u> at 250.

While the statute in <u>Morissette</u> contained the term "knowingly," such that the Court need only determine whether it reached the provision regarding conversion of government property, the Court has also applied the presumption to statutes that are otherwise silent on mens rea. For instance, in <u>U.S. Gypsum Co.</u>, the Court expressed that it was averse to reading the Sherman Anti-Trust Act as dispensing with a mens rea requirement because of "the simple omission of the appropriate phrase [mens rea] from the statutory definition." 438 U.S. at 438. <u>See also</u> <u>Carter</u> v. <u>United States</u>, 530 U.S. 255, 259, 269 (2000) (explaining that the lack of explicit mention of mens rea in a statute criminalizing the taking of bank property by "force and violence, or intimidation," still required "proof of knowledge" as to the act for conviction); <u>Posters 'N' Things, Ltd.</u> v. <u>United States</u>, 511 U.S. 513, 523-24 (1994) (applying presumption of mens rea to a statute, thereby requiring defendant to have had knowledge that

- 19 -

the materials possessed were drug paraphernalia likely to be used with illegal drugs); Staples, 511 U.S. at 605-06, 615 (holding that a presumption of mens rea applies to statute otherwise silent on knowledge and thus requiring defendant to have known that the gun was an automatic); United States v. Bailey, 444 U.S. 394, 406 n.6 (1980) (reasoning that simply because there is no explicit mention of mens rea does not mean the offense is a "'strict liability' crime for which punishment can be imposed without proof of any mens rea at all").

Moving on to how the Supreme Court applies the presumption of mens rea, we note that it has drawn an important distinction between elements of an offense and sentencing factors. An element of an offense is a "fact necessary to constitute the crime," Almendarez-Torres v. United States, 523 U.S. 224, 240 (1998), while sentencing factors generally "involve characteristics of the offender -- such as recidivism, cooperation with law enforcement, or acceptance of responsibility," O'Brien, 560 U.S. at 227 (citation omitted). Elements of a crime must be proven to a jury beyond a reasonable doubt, while sentencing factors only need to be proven to a judge by a preponderance of the evidence. Id. at 224. Immediately applicable here are the Supreme Court's decisions in United States v. Dean and O'Brien, which, together with principles of criminal law, stand for the proposition that the presumption of mens rea applies to elements

of an offense.  See Dean v. United States, 556 U.S. 568 (2009); O'Brien, 560 U.S. at 227.

At issue in Dean was § 924(c)(1)(B)(ii)'s neighbor provision, § 924(c)(1)(A)(iii),[8] which imposes a mandatory ten years' imprisonment when a defendant, during a crime of violence or drug trafficking, "discharge[s]" a firearm.  556 U.S. at 571. In reaching a decision as to whether the discharge provision required proof of intent, the Supreme Court drew a distinction between sentencing factors and elements of the offense and held that, because § 924(c)(1)(A)(iii) was a sentencing factor, proof of intent was not required.  Dean, 556 U.S. at 573-74, 577.

The Court confirmed the importance of this distinction in O'Brien where, in assessing whether the automatic character of a firearm as outlined in § 924(c)(1)(B)(ii) must be proven to the jury beyond a reasonable doubt, the Court again drew a distinction between elements of a crime and sentencing factors.  560 U.S. at 221.  The Supreme Court affirmed this court and held that the government needed to prove beyond a reasonable doubt that the firearm in question was a machinegun given, in part, because "[t]he immense danger posed by machineguns, the moral depravity in choosing the weapon, and the substantial increase in the minimum sentence provided by the statute."  Id. at 230, 235.  In reaching

---

[8] See note 6 for the full statutory text.

- 21 -

its conclusion, the Court emphasized the potential unfairness that could result from classifying the machinegun provision as a sentencing factor because it could very well produce a conflict between the judge and the jury (given that the jury could find that the defendant used a pistol and the judge at sentencing could find that it was a machinegun) and result in a "drastic, sixfold increase" in the severity of the sentence (from the five-year mandatory minimum for a firearm to the thirty-year minimum for a machinegun).  Id. at 228-29.

O'Brien thus eliminated the underlying assumption that other circuits had previously relied on to justify excluding a mens rea requirement from possession of a machinegun: that subsection (c)(1)(B)(ii) was a sentencing factor that did not require evidence of mens rea.  Taken together, Dean and O'Brien thus indicate that the presumption of mens rea applies to elements of an offense, but generally does not apply to sentencing factors.  See Burwell, 690 F.3d at 543 (Kavanaugh, J., dissenting) ("If a fact is an element of the offense and not a sentencing factor, the presumption [of mens rea] applies.").

O'Brien left open whether the government needed to prove that the defendant knew that the firearm in question included the characteristics relevant to the section charged, the precise issue we confront today.  See 560 U.S. at 222 ("The issues in the present case do not require the Court to consider any contention that a

defendant who uses, carries, or possesses a firearm must be aware of the weapon's characteristics. This opinion expresses no views on the point."). However, because mens rea presumptively applies to elements of a crime and because the Supreme Court determined that the automatic character of a firearm is an element of the offense, rather than a sentencing factor, it only follows that § 924(c)(1)(B)(ii) is subject to the mens rea presumption. See Model Penal Code § 2.02(4) ("When the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears.").

The government pushes back and asserts that the presumption of mens rea is inapplicable to § 924(c)(1)(B)(ii) because this statute includes the predicate crime of either drug trafficking or a crime of violence and "does not punish conduct that would otherwise be innocent." We disagree for a number of reasons. The Supreme Court has indeed applied the presumption to cases where a statute criminalizes otherwise innocent conduct. See, e.g., Liparota, 471 U.S. at 424-25 (ruling that statute criminalizing the acquisition and possession of food stamps contained a mens rea requirement that defendant knew his acquisition or possession was unauthorized); Morissette, 342 U.S.

at 276 (holding that statute criminalizing converting government property required criminal intent). The Court has also often "emphasized scienter's importance in separating wrongful from innocent acts." Rehaif, 139 S. Ct. at 2196-97 (collecting cases).

Nevertheless, it does not necessarily follow that the presumption only applies there and nowhere else. Notably, the Supreme Court has previously applied the presumption of mens rea to a federal criminal statute that included a predicate crime. See Flores-Figueroa v. United States, 556 U.S. 646 (2009). Flores-Figueroa involved a statute that imposed two additional years of mandatory imprisonment to defendants who -- while engaged in the commission of certain crimes already punishable by prison time, including theft of government property or fraud -- "knowingly transfer[], possess[], or use[], without lawful authority, a means of identification of another person." Id. at 647 (quoting 18 U.S.C. § 1028A(a)(1)). Because this statutory provision already included the predicate crime of theft of government property or fraud, according to the government's argument, the presumption should not apply. However, the Supreme Court did not rule as such. Instead, it held that the government was required "to show that the defendant knew that the 'means of identification' he or she unlawfully transferred, possessed, or used, in fact, belonged to 'another person.'" Id. (quoting

- 24 -

§ 1028A(a)(1)). Thus, Flores-Figueroa directly undermines the government's argument.

Furthermore, the Supreme Court has not explicitly articulated a rule dictating that the presumption will only apply where innocent conduct is at stake. Instead, the Court has repeatedly stated that criminal offenses that dispense with a mens rea requirement are "disfavored." Staples, 511 U.S at 606 ("Relying on the strength of the traditional rule, we have stated that offenses that require no mens rea generally are disfavored."); U.S. Gypsum Co., 438 U.S. at 437-38 ("While strict-liability offenses are not unknown to the criminal law and do not invariably offend constitutional requirements, the limited circumstances in which Congress has created and this Court has recognized such offenses, attest to their generally disfavored status." (internal citations omitted)). And this makes sense since "the understanding that an injury is criminal only if inflicted knowingly 'is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.'" Rehaif, 139 S. Ct. at 2196 (quoting Morissette, 342 U.S. at 250). Further, the Supreme Court has made clear that "[t]he heart of the retribution rationale is that a criminal sentence must be directly related to the personal culpability of the criminal offender." Tison v. Arizona, 481 U.S. 137, 149 (1987). Doing away with the

defendant's knowledge of the characteristics of the firearm would make possessing a machinegun a strict liability crime, which would eliminate the longstanding "concurrence of an evil-meaning mind with an evil-doing hand." Morissette, 342 U.S. at 251.

Moreover, this reasoning is in accord with basic principles of federal criminal law. Merely because a defendant has already engaged in wrongdoing does not mean that the government should not be held to the burden of demonstrating that the defendant consciously chose between two distinct types of firearms. Why should this underlying offense trigger an additional thirty years when Congress punished that conduct elsewhere? In other words, while a § 924(c)(1)(B)(ii) defendant might be guilty of the predicate offense -- that is, possession of a firearm in furtherance of a crime of violence or drug trafficking crime -- we see no logic in dispensing with the requirement of a vicious will for the second offense where the only additional element is that the firearm is a machinegun. This is particularly true where the type of firearm chosen can potentially result in a sixfold sentencing increase. Thus, the government's arguments to the contrary are not persuasive.

\*\*\*

Having established that the presumption applies here, we are still required to ask whether there is some specific indication from Congress that it should not apply to § 924(c)(1)(B)(ii).

- 26 -

<u>Staples</u>, 511 U.S. at 606 ("[S]ome indication of congressional intent, express or implied, is required to dispense with <u>mens rea</u> as an element of a crime."). We see no indication here that Congress sought to take the extraordinary step of making § 924(c)(1)(B)(ii) a strict liability offense. The Supreme Court has said that there are certain cases where courts should depart from the presumption of a culpable mental state. For example, the Supreme Court has declined to apply the presumption in favor of scienter for some "activities affecting public health, safety, and welfare." <u>United States</u> v. <u>Freed</u>, 401 U.S. 601, 607 (1971) (citing <u>Morissette</u>, 342 U.S. at 254). The Court has also indicated that congressional silence concerning the mental element of the offense may signify that Congress intended to dispense with traditional mens rea requirements when a statutory provision involves something like a dangerous weapon of war. <u>See, e.g.</u>, <u>id.</u> at 609-10 (holding that Congress considered that the potential danger of owning an unregistered hand grenade outweighed potentially penalizing an innocent grenade owner). This reasoning is premised on the understanding that individuals should be on notice that their conduct is subject to regulation such that no mens rea need be read into the statutory provision. The additional consideration at play here, however, is the principle of proportionality.

Indeed, our decision accords with the Supreme Court's jurisprudence on proportionality. <u>Staples</u> offers guidance.

- 27 -

There, the Supreme Court considered a nearly identical statute to the one before us -- 26 U.S.C. § 5861(d) -- which makes it unlawful for a defendant "to receive or possess" a firearm that is not registered to them, § 5861, including a machinegun, § 5845(a)(6), and includes a penalty of up to ten years. Staples was charged with possessing a rifle that "had been filed away, and . . . assembled with an M-16 selector switch and several other M-16 internal parts," making it a machinegun. Staples, 511 U.S. at 602-03. He argued that he was ignorant as to the rifle's ability to fire automatically since, for him, it had only fired semiautomatically. Id. at 603-04. As such, he proposed that the jury be instructed that the government was required to prove that he knew that the gun would fire fully automatically. Id.

While the plain text of § 5861(d) does not contain an explicit mens rea requirement, the Court extended the presumption of mens rea to the provision, concluding that a defendant must know that the firearm is automatic. Id. at 602, 605. In doing so, the Court emphasized that the "harsh" ten-year "penalty attached to § 5861(d) suggests that Congress did not intend to eliminate a mens rea requirement for violation of the section" because "[h]istorically, the penalty imposed under a statute has been a significant consideration in determining whether the statute should be construed as dispensing with mens rea." Id. at 616, 619. While small penalties might complement the absence of

mens rea, the court noted that "[i]n a system that generally requires a 'vicious will' to establish a crime, imposing severe punishments for offenses that require no mens rea would seem incongruous." Id. at 616-17 (internal citations omitted). Moreover, it would be inconsistent to hold that no mens rea is required in § 924(c)(1)(B)(ii) while holding that § 5861(d) does contain a mens rea requirement since both statutes employ the same definition of a "machinegun."

This reasoning accords with the Court's decisions in X-Citement Video (considering 18 U.S.C. § 2252), U.S. Gypsum Co. (construing criminal violations of the Sherman Act), and Morissette (involving a statute criminalizing converting government property). Each case involved the interpretation of a federal statute imposing a maximum sentence of ten years, three years, and one year, respectively. In each instance, the Supreme Court highlighted the severity of the punishment imposed, noting that the "penalty is high," Morissette, 342 U.S. at 260, that "harsh penalties loom[ed] equally large," X-Citement Video, 513 U.S. at 72, and that "[t]he severity of the[] sanctions provide[d] further support for [the] conclusion that the [statutory provision] should not be construed as creating strict-liability crimes," U.S. Gypsum Co., 438 U.S. at 442 n.18.

Such is the case here. The penalty at issue is no light sentence as it is an additional thirty years on top of the

punishment for the underlying crime.  That is, it is triple that considered in Staples and X-Citement Video, ten times that considered in U.S. Gypsum Co., and thirty times that considered in Morissette.  Because a minimum of thirty years hang in the balance for defendants charged with § 924(c)(1)(B)(ii), it does not make sense that Congress would impose such a draconian sentence for a crime and not hold the government to the burden of proving knowledge of the specific characteristics of the firearm that make the defendant culpable under that particular section.  Common sense and the above-referenced cases indicate that Congress could not have intended a strict liability crime for a crime with a thirty-year sentence attached.

Ultimately, "[t]he purpose and obvious effect of doing away with the requirement of a guilty intent is to ease the prosecution's path to conviction."  Morissette, 342 U.S. at 263.  But where thirty years are at stake, holding the government to its burden of establishing the defendant's knowledge beyond a reasonable doubt is paramount to maintaining our understanding of the choice between good and evil.  Holding otherwise would mean that a defendant "can be subject to [an additional thirty years] imprisonment, despite absolute ignorance of the gun's firing capabilities, if the gun [used in a crime of violence or drug trafficking offense] turns out to be an automatic."  Staples, 511 U.S. at 615.  And we know that ignorance is indeed possible since

"virtually any semiautomatic weapon may be converted, either by internal modification or, in some cases, simply by wear and tear, into a machinegun."  Id.  As such, these Supreme Court cases and the shared definition of a machinegun between § 924(c)(1)(B)(ii) and the statute at issue in Staples support our conclusion that the jury should have been instructed that, to convict of possession of a machinegun in furtherance of drug trafficking, the government had to prove Pérez-Greaux knew the firearm had the characteristics of an automatic weapon.

This ruling accords with this court's previous observations of the importance of considering the severity of the penalty as outlined by Staples.  For instance, in United States v. Nieves-Castaño, we considered a conviction under 18 U.S.C. § 922(o), which makes it "unlawful for any person to transfer or possess a machinegun."  480 F.3d 597, 599 (1st Cir. 2007) (quoting § 922(o)).  At issue was whether the government had proved that the defendant knew the rifle in question, an AK-47, had the characteristics of a machinegun to withstand conviction since § 922(o) contains a mens rea requirement.  Id. at 598.  We ultimately reversed the conviction on the basis of insufficient evidence of the defendant's mens rea.  Id. at 602.  While we did not have to decide whether § 922(o) contained a mens rea requirement because the government conceded that the "Staples's scienter requirement also applies to prosecutions under 18 U.S.C.

§ 922(o)," we noted that this concession was correct given the "harsh penalty" attached to § 922(o), up to ten years. Id. at 600.

Overall, we think that "if Congress had intended to make outlaws of gun owners who were wholly ignorant of the offending characteristics of their weapons, and to subject them to lengthy prison terms, it would have spoken more clearly to that effect." Staples, 511 U.S. at 620.

* * *

We recognize that other circuits have come out differently when confronted with the § 924(c)(1)(B)(ii) mens rea issue. Prior to the Supreme Court's decision in O'Brien, every court of appeals to consider the issue held that the statute did not contain a mens rea requirement. However, those decisions were based on the presumption that § 924(c)(1)(B)(ii) was a sentencing enhancement and not an element of the crime, which O'Brien debunked. See, e.g., United States v. Ciszkowski, 492 F.3d 1264, 1269 (11th Cir. 2007) ("[B]ecause § 924(c) is an enhancement statute, it does not require proof of 'particularized knowledge' of the weapon['s] characteristics."); United States v. Gamboa, 439 F.3d 796, 812 (8th Cir. 2006) ("Because the facts concerning the type of firearm used in § 924(c)(1) are sentencing factors, and not elements of the offense, we also conclude that the United States was not required to show that Gamboa subjectively knew that

the firearm was a machinegun."); United States v. Brown, 400 F.3d 1242, 1255 n.9 (10th Cir. 2005) ("Knowledge that a gun is a machine gun is not an element of the third count against Mr. Brown for carrying a gun during and in relation to a drug trafficking crime."); United States v. Morrow, No. CRIM.A. 04-355CKK, 2005 WL 3163804, at *4 (D.D.C. June 20, 2005), aff'd sub nom. Burwell, 642 F.3d 1062 (D.C. Cir. 2011), reh'g en banc granted, judgment vacated (Oct. 12, 2011), opinion reinstated and aff'd, 690 F.3d 500 (D.C. Cir. 2012) ("[T]he type of a firearm used or carried under § 924(c) [is] a sentencing enhancement rather than an element of the offense and, therefore, a separate mens rea for the type of weapon need not be proven." (quoting United States v. Nava-Sotelo, 354 F.3d 1202, 1206 (10th Cir. 2003)) (second alteration in original)); see also United States v. Eads, 191 F.3d 1206, 1214 (10th Cir. 1999) ("[W]e agree with the Fifth Circuit that the type of firearm used or carried is a sentencing enhancement rather than an element of the offense . . . .").

As we mentioned earlier, the only two Circuits that have considered this issue post O'Brien are the D.C. and Eleventh Circuits, which held that the statutory provision did not contain a mens rea requirement. See Burwell, 690 F.3d at 500; Haile, 685 F.3d at 1211. Both decisions were based, in large part, on each circuit's precedent, to which we are not bound. For instance, in Haile, the Eleventh Circuit reasoned that because it had previously

- 33 -

held in Ciszkowski that § 924(c)(1)(B)(ii) did not require proof of the defendant's knowledge of the weapon's characteristics, and because O'Brien did not explicitly overrule Ciszkowski, it was bound "[u]nder the prior precedent rule . . . to follow [] prior binding precedent 'unless and until it is overruled by [the] court en banc or by the Supreme Court.'" Haile, 685 F.3d at 1218 (quoting prior cases). As such, and without discussing the merits of the claim, the Eleventh Circuit held that the government was not required to prove knowledge.

Similarly, in Burwell, the D.C. Circuit held en banc that, given the court's prior decision in Harris v. United States, 536 U.S. 545 (2002) and the "high burden imposed on any party who urges [the] [c]ourt to depart from the principle of stare decisis," it simply could not "set aside a circuit precedent that . . . governed [its] interpretation for twenty years." Burwell, 690 F.3d at 504. Because in determining congressional intent "[n]othing [in Harris] turned on whether the machinegun provision was considered an element of the offense or a sentencing factor," the Burwell court insisted it was bound by its circuit precedent to find no mens rea requirement. Burwell, 690 F.3d at 505. Unlike Haile and Burwell, we write on somewhat of a blank slate and are not bound by our own circuit precedent holding one way or the other.

Our decision today is consistent with prior discussions within our Circuit even though this is the first time this particular issue has been squarely presented to us. Recall that, in O'Brien, we did not answer the question of the defendant's knowledge. 542 F.3d at 925. Two other cases decided after our court's decision in O'Brien bolster our conclusion that § 924(c)(1)(B) contains a knowledge requirement. See United States v. Laureano-Pérez, 797 F.3d 45, 74-75 (1st Cir. 2015); United States v. Rivera-Rivera, 555 F.3d 277, 291 n.14 (1st Cir. 2009).

First, in addressing a challenge to a violation of § 924(c)(1)(C)(i), which mandates a minimum sentence of twenty-five years following a subsequent conviction under this subsection, we held that § 924(c)(1)(C)(i) constitutes a sentencing enhancement rather than an element of the offense. Rivera-Rivera, 555 F.3d at 291. In a footnote, however, we construed our earlier decision in O'Brien, 542 F.3d 921, as "conclud[ing] that knowing possession of a machine gun is an element of the crime that must be proven to the jury." Id. at 291 n.14. While Pérez-Greaux would have us accept this footnote as binding precedent, we cannot do so because the issue in Rivera-Rivera was whether § 924(c)(1)(C)(i), not § 924(c)(1)(B), was an element of the offense. See United States v. Starks, 861 F.3d 306, 323 (1st Cir. 2017) (finding that certain language was

dicta since "[i]t was presented without analysis and, because it addressed a broader argument . . . it was not necessary to the court's conclusion"); Rivera-Rivera, 555 F.3d at 291 n.14 (stating in the same footnote, that the issue then before the court did not "make any allegations regarding the possession of a machine gun"). Notwithstanding that this case did not directly address the issue now before us, it buttresses our conclusion, since we clearly arrived at the same conclusion.

Second and more recently, in Laureano-Pérez, we considered, among other things, a challenge to convictions for possession of a machine gun under § 924(c)(1)(B)(ii) and § 922(o). 797 F.3d at 74. While the court held that there was sufficient evidence to conclude that the defendant knew he possessed a weapon having the characteristics which brought it within the definition of a machinegun, the court assumed that § 924(c)(1)(B)(ii) and § 922(o) shared the same mens rea requirement. Id. at 74-75. Even though Laureano-Pérez does not bind us to a specific ruling, it suggests that applying a knowledge requirement to § 924(c)(1)(B)(ii) is in keeping with our prior interpretations when possession of a firearms is an element of the charged crime.

\*\*\*

Having determined that the district court instructed the jury in error, we would now typically turn to assessing whether the error was harmless. United States v. Fernández-Jorge, 894

- 36 -

F.3d 36, 54 (1st Cir. 2018) ("When jury instructions fail to account for an element of the crime charged, that error is harmless only if we can conclude 'beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error.'" (quoting United States v. Pizarro, 772 F.3d 284, 297-98 (1st Cir. 2014)). Pérez-Greaux briefly asserts that the error was not harmless, but the government does not address this point in its briefing. Instead, at oral argument, the government stated that if we were to find that the district court failed to give the appropriate instruction, we "would have to vacate" and remand for a new trial. Given this concession, we vacate Pérez-Greaux's § 924(c)(1)(B)(ii) conviction and remand his case for a new trial on this count.[9]

## B. SUFFICIENCY OF THE EVIDENCE

As we noted up front, despite concluding Pérez-Greaux's conviction under § 924(c)(1)(B)(ii) must be vacated and remanded for a new trial based on the erroneous jury instruction, we still address his argument that there was insufficient evidence to prove he knew the firearm in question had been altered to allow automatic firing because, if we agree with him, the result would be the

---

[9] While we vacate and remand for a new trial on Count Two, we do not ascribe fault to the district court in not giving the jury the mens rea instruction we now require since at the time of the trial there was scant guidance from our circuit as to the issue.

reversal of the conviction and instructions to dismiss this count and not simply a remand to the district court for a new trial. See Godin, 534 F.3d at 61 (citations omitted).

Rule 29 provides that a court may acquit a defendant if the evidence is insufficient to establish factual guilt. We review a district court's determination on a Rule 29 motion for acquittal de novo, viewing the evidence in the light most favorable to the government. United States v. Bristol-Mártir, 570 F.3d 29, 38 (1st Cir. 2009). Pérez-Greaux faces a formidable standard. While we apply de novo review to preserved sufficiency claims, "[i]t is not our job to re-weigh the evidence or second-guess the jury's credibility determinations." United States v. Bobadilla-Pagán, 747 F.3d 26, 32 (1st Cir. 2014) (citation omitted). Instead, we must credit the government's witnesses, draw all reasonable inferences in its favor, and uphold the verdict if it is "supported by a plausible rendition of the record." Id. (quoting United States v. Cortés-Cabán, 691 F.3d 1, 16 (1st Cir. 2012)). In other words, reversal is warranted only if we find that "no levelheaded jury could have found [Pérez-Greaux] guilty." Id. (quoting United States v. Guerrier, 669 F.3d 1, 7 (1st Cir. 2011)). For the reasons we explain below, we conclude that the government presented sufficient evidence for the jury to convict Pérez-Greaux of (1) possessing a firearm in furtherance of a drug trafficking crime

and (2) possessing a machinegun in furtherance of a drug trafficking crime. We address each in turn.

### 1. Possession of a Firearm in Furtherance of a Drug Trafficking Crime

We first address Pérez-Greaux's challenge to his conviction for possession of a firearm "in furtherance of" a drug trafficking crime. § 924(c)(1)(A). To convict Pérez-Greaux under § 924(c)(1)(A), the government must establish at trial that he (1) possessed a firearm (2) in furtherance of (3) a drug trafficking crime. § 924(c)(1)(A), (2); United States v. Gonsalves, 859 F.3d 95, 111 (1st Cir. 2017). On appeal, Pérez-Greaux does not dispute that he possessed a firearm, nor that he committed a drug trafficking crime. Indeed, he himself led law enforcement to the firearm's precise location when they entered the home, and there was ample evidence that he engaged in drug trafficking given that he told Agent Miranda that he had been working as drug trafficker since March or April of 2018. See United States v. Rodríguez-Martinez, 778 F.3d 367, 373 (1st Cir. 2015) ("A finding of constructive possession requires a showing 'that the person knows (or has reason to know) that the firearm is within easy reach, so that he can take actual possession of it virtually at will.'" (quoting United States v. Robinson, 473 F.3d 387, 399 (1st Cir. 2007))). Thus, we are only left to determine whether, as he contends, the evidence is insufficient that he

possessed the firearm "in furtherance of" the undisputed drug trafficking crime.

Mere presence of a firearm in an area where a criminal offense occurred is not enough to sustain a conviction, Bobadilla-Pagán, 747 F.3d at 35; rather, for a person to possess a gun "in furtherance of" a drug offense, the government must establish "a sufficient nexus between the firearm and the drug crime such that the firearm advances or promotes the drug crime," United States v. Ramirez-Frechel, 23 F.4th 69, 74 (1st Cir. 2022) (quoting United States v. Pena, 586 F.3d 105, 113 (1st Cir. 2009)). We analyze "in furtherance of" evidence from both objective and subjective viewpoints, taking into account that the element lacks "a settled, inelastic, definition." Id. As to objective factors, we consider "(1) the proximity of the firearm to drugs or contraband; (2) whether the firearm was easily accessible; (3) whether the firearm was loaded; and (4) the surrounding circumstances." Bobadilla-Pagán, 747 F.3d at 35 (citation omitted). A subjective factor could be, for example, evidence "that a defendant obtained a firearm to protect drugs or proceeds"; but, where subjective indicators are absent, the jury is able to infer intent from objective circumstances. Id. (citation omitted).

Here, objective factors point in favor of concluding that the "in furtherance of" element is satisfied. First, the

government offered testimony that Pérez-Greaux led law enforcement to the firearm, which was recovered on the top shelf of his children's bedroom closet. This demonstrates that the firearm was located in the same residence as the drugs. Had the government stopped here, this would have been insufficient to satisfy the "in furtherance of" element since "[t]he mere presence of a firearm in the area where the drug offense occurred," id., is not enough. However, the government also proffered testimony that the firearm was found in close proximity to the cocaine found in the adjoining room, was easily accessible since the officer who recovered the firearm stood at 5'6" and had little difficulty recovering it, and accompanying the firearm, though not necessary to uphold a conviction, were magazines and bullets. See United States v. Mendoza-Maisonet, 962 F.3d 1, 15 (1st Cir. 2020) (holding that the firearm was accessible even though it was in a child's bedroom and needed to be reached by standing on a chair). The close proximity and accessibility of the firearm thereby indicate that a reasonable jury could draw the inference that there was some connection between the firearm and the drug trafficking crime.

Moreover, we have previously held that the "in furtherance of" element may be established where there is some indication that the firearm is possessed "to protect drugs or sales proceeds." United States v. Alverio-Meléndez, 640 F.3d 412, 420 (1st Cir. 2011) (quoting United States v. Marin, 523 F.3d 24, 27

(1st Cir. 2008)). Pérez-Greaux presented shifting stories as to how he acquired the firearm -- he first told officers that he was storing it for a drug supplier, alias "Alex," who asked him to "[j]ust hold on to that while I come back," but later, in the same interview, Pérez-Greaux said the firearm belonged to someone named "Marcos" whom he feared. While Pérez-Greaux's statements as to how he came to possess the firearm changed, a reasonable jury could have accepted his initial version of the facts -- that he had obtained the firearm from Alex -- and inferred that, because Alex gave him the firearm when he gave him the cocaine, his "taking possession of the firearm from Alex [w]as advancing or promoting the drug trafficking." Pérez-Greaux, 454 F. Supp. 3d at 140. Moreover, as the district court points out, the jury could have also inferred that when Alex gave Pérez-Greaux the firearm and cocaine in Isla Verde, the firearm was used to protect the drugs as Pérez-Greaux made his way home to Arecibo. See id. at 140-41.

Further, the jury could have inferred that he possessed the firearm to safekeep the drugs and/or proceeds inside his residence since he used his home to package and ship the cocaine. See Mendoza-Maisonet, 962 F.3d at 15 (holding that one such way a firearm might be said to be possessed "in furtherance of" a drug crime is for a jury to find that it was possessed to protect the defendant's drug supply). Such was the case in Bobadilla-Pagán. There, the evidence showed that the defendant kept a loaded,

- 42 -

unlicensed firearm just a few feet away from drugs in a minivan. 747 F.3d at 29. While the defendant, like Pérez-Greaux, argued that the mere presence of the firearm where drugs were kept could not be said to be "in furtherance of" a drug trafficking crime, we held that, given "the extremely high bar set for a sufficiency challenge," those facts, taken together with the jury hearing testimony that "drug traffickers often possess firearms for protection of drug trafficking activities," were sufficient evidence for a rational jury to find that the defendant possessed the firearm "in furtherance of" his drug trafficking activities. Id. at 36. Because a jury is entitled to make these inferences, we cannot say that no level-headed jury could have found otherwise here.

Pérez-Greaux insists that the evidence does not move beyond mere possession. He argues that the firearm was unloaded and not easily accessible because it was "packed-up" (since it was wrapped in bags) and stored in an entirely separate room from the drugs that were uncovered. But standing up next to our case law, these arguments fall flat. We have previously held that a firearm was possessed "in furtherance of" a drug crime even when the firearm was by no means easily accessible. For instance, in United States v. Grace, we concluded that there was sufficient evidence to establish that Grace possessed the unloaded firearm "in furtherance of" her drug crimes even though the firearm was stored

in a drawer under her bed, in her bedroom, to protect the drug supply found in her computer room. 367 F.3d 29, 32-33, 35-36 (1st Cir. 2004). And in United States v. Luciano, we had "no difficulty" concluding that the defendant's possession of a firearm to protect his drugs provided a sufficient nexus between the drugs and the firearm even though the firearms were discovered in a crawlspace in the defendant's apartment ceiling. 329 F.3d 1, 3-4, 6 (1st Cir. 2003) (concluding sufficient nexus after law enforcement officers discovered heroin, drug paraphernalia, two handguns, and two loaded, but detached, magazines in the crawlspace of the apartment where defendant, who had been arrested on the street while carrying heroin, had just been, based on the "close proximity of the firearms and loaded magazines to the significant stockpile of heroin"). The firearm in Pérez-Greaux's residence was surely more easily accessible on the top shelf of a closet than hidden underneath a bed or in the crawlspace of a ceiling. And it is of no moment that Pérez-Greaux argues that the firearm was unloaded since Grace also involved an unloaded firearm. See 367 F.3d at 36 ("[A] gun does not even have to be operational, let alone loaded, to qualify as a firearm for section 924 purposes.").

Thus, viewing the evidence in the light most favorable to the verdict, we conclude that based on the proximity of the drugs, accessibility of the firearm, and the surrounding circumstances, a rational factfinder could conclude that

Pérez-Greaux possessed the firearm "in furtherance of" the drug trafficking crime and thus in violation of the § 924(c) charges.

### 2. Possession of a Machinegun in Furtherance of a Drug Trafficking Crime

In addition to challenging the "in furtherance" part of his firearms convictions, Pérez-Greaux also contends that there is insufficient evidence to conclude that he possessed a machinegun in furtherance of a drug trafficking crime. To impose an additional mandatory minimum sentence of thirty years for possession of a machinegun under § 924(c)(1)(B)(ii), the government must establish beyond a reasonable doubt that the defendant (1) possessed a machinegun (2) in furtherance of (3) a drug trafficking crime and, based on today's holding, (4) that the defendant knew that the firearm he possessed had the characteristics that brought it within the definition of a machinegun. § 924(c)(1)(B)(ii); see supra. Pérez-Greaux argues that there is insufficient evidence to prove he knew the firearm he possessed was a machinegun, while the government argues that, notwithstanding that it did not set out to present mens rea evidence about the type of firearm at trial (given that the district court decided that a mens rea instruction was not appropriate), the evidence it did present was sufficient to prove knowledge. Viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict, we

conclude that there was sufficient evidence for a jury to establish that Pérez-Greaux knew that the firearm he possessed had the characteristics of a machinegun.  Thus, acquittal on this count is not warranted.  We explain.

"To meet the knowledge requirement threshold [under § 922(o)], the government must prove that 'the defendant had knowledge of the characteristics that brought the gun within the statutory definition, and not that []he had knowledge that the gun was in fact considered a machine gun under federal law.'"  United States v. Torres-Pérez, 22 F.4th 28, 32 (1st Cir. 2021) (second alteration in original) (quoting Nieves-Castaño, 480 F.3d at 599).  Further, "[t]he requisite mens rea may be established by circumstantial evidence."  Id. at 32-33 (quoting Nieves-Castaño, 480 F.3d at 601).  And while "[i]ndividual pieces of evidence viewed in isolation may be insufficient in themselves to prove a point, . . . in cumulation [they] may indeed meet the mark."  United States v. Shaw, 670 F.3d 360, 362 (1st Cir. 2012).  Thus, at the Rule 29 posture, the question before us is whether the "evidence, including all plausible inferences drawn therefrom, would allow a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the charged crime."  Torres-Pérez, 22 F.4th at 32 (quoting United States v. Troy, 583 U.S. F.3d 20, 24 (1st Cir. 2009)).  We conclude that, in this case, a rational factfinder could reach this conclusion.

Here, crediting the government's witnesses, as we must on a Rule 29 motion, the cumulation of evidence reveals that the firearm in question was indeed a machinegun as federal law defines it and that a reasonable jury could draw the reasonable inference that Pérez-Greaux knew it was one. First, the government offered testimony from a firearms expert that the firearm in question was a semiautomatic Glock 26 pistol that had been converted into a fully automatic machinegun through the installation of an automatic sear, created by an individual and not by Glock, on the back of its slide. The expert also testified that, based on his training and expertise, he could simply look at the firearm and conclude that it is a machinegun but that he confirmed this conclusion by test firing the weapon. While "a juror may not reasonably infer merely from the fact that one constructively possesse[d] a machinegun that the defendant knows . . . about the characteristics of that weapon," United States v. Pina-Nieves, 59 F.4th 9, 14 (1st Cir. 2023), here, the jury was given the opportunity to view the machinegun and the visible alterations made as described by the government's expert. Moreover, the government presented evidence that Agent Rivera witnessed Pérez-Greaux carrying a firearm in a holster on his hip, that Pérez-Greaux stored the firearm in the same bag as a thirty-round magazine, told the agents carrying out the search warrant where the firearm was located, possessed firearm periodicals, and had an

extended magazine.  From this evidence, a reasonable jury could have inferred that the firearm Agent Rivera saw Pérez-Greaux carrying was the same machinegun recovered by law enforcement, meaning Pérez-Greaux had "handled" the firearm.  Because he "handled" the firearm and was familiar with firearms -- inferred from his possession of firearm periodicals -- a reasonable jury could have thus concluded that he knew it had been altered to fire automatically.

This court has affirmed the denial of a Rule 29 motion for acquittal on less evidence.  For instance, in Torres-Pérez, we concluded that the defendant knew the firearm was a machinegun where the defendant was seen removing the firearm from the waistband of his shorts and throwing it into a truck via the open driver's side window.  22 F.4th at 30, 33.  There, as here, the government presented evidence that the defendant handled the weapon (when he threw it into a truck), as well as expert testimony that the weapon's chip was visible just from looking at the firearm, officer testimony that "he could tell by looking at the Glock that [it] had been altered," evidence that the alterations to the firearm were "obvious and visible," and evidence that the defendant had "run from police," from which the jury could infer "consciousness of guilt."  Id. at 33.  Additionally, since "the jury could view the Glock for themselves during trial and had the opportunity to decide whether the chip was visible and obvious to

[the defendant,]" the jury could infer that the defendant "knew the Glock could fire multiple bullets with one pull of the trigger" based on the "extended magazine." Id. As we have already described, similar evidence was also presented at Pérez-Greaux's trial.

The government also presented evidence that: (1) the firearm was found in the same bag as a thirty-round magazine, from which the jury could have drawn the inference that the firearm could fire multiple bullets; (2) Pérez-Greaux possessed firearm periodicals, evincing his knowledge of firearms; and (3) Pérez-Greaux and the person who gave him the firearm, whether crediting Pérez-Greaux's first or second version of how he came to possess it, were close, such that they would have told him that the firearm was a machinegun had he not in fact seen the weapon. See Laureano-Pérez, 797 F.3d at 76 ("Given this apparent closeness, a jury could rationally conclude that [the co-conspirator] would have confided in [the defendant] regarding the [contents] of the bag."). Thus, we cannot say that, given the cumulation of all of this circumstantial evidence, no levelheaded jury could have found Pérez-Greaux guilty. See Bobadilla-Pagán, 747 F.3d at 32.

Pérez-Greaux counters that the government failed to present sufficient evidence because it did not present evidence that a layperson (rather than an expert) could draw the conclusion, simply by looking at the firearm, that it had been modified to a

machinegun.  But this argument is unavailing since such evidence was not required in Torres-Pérez where we affirmed on similar facts.  See 22 F.4th at 33.  He further argues, in a cursory manner, that his facts are analogous to those in Nieves-Castaño, where we reversed a conviction based on insufficient evidence of knowledge.  See 480 F.3d at 600-02.  There, however, we considered a rifle, not a Glock pistol, and the firearm had been modified via an internal alteration, such that the only external evidence that the firearm had been modified was a "small mark or hole" that was not easily noticeable, and thus was unlike the visible alteration present here.  Id. at 600.  Further, unlike here, no evidence was presented to show that the defendant had "any expertise in firearms."  Id. at 601.  For all of these reasons, Pérez-Greaux is not entitled to an acquittal on this count.

### C.  PRETRIAL AND TRIAL ERRORS

Finally, Pérez-Greaux separately requests a new trial on the basis that (1) the district court erred in three evidentiary rulings, which denied him the right to a fair trial; (2) that prosecutorial misconduct in closing arguments violated his Fifth and Sixth Amendment rights; (3) that the district court erred in denying his motion to suppress without a Franks hearing; and (4) that, cumulatively, the errors already outlined undermined his right to a fair trial.  We address each argument in turn,

ultimately concluding that a new trial is unnecessary based on these purported errors.

### 1. Evidentiary Rulings

Pérez-Greaux first contends that the district court erred in three evidentiary rulings, namely that the district court (a) precluded defense witness testimony; (b) excluded cross-examination of Agent Miranda on Pérez-Greaux's mens rea statements; and (c) admitted images extracted from two phones in Pérez-Greaux's house and opinion testimony that these materials evidence specific prior illegal conduct. All asserted errors having been preserved, we review for abuse of discretion, United States v. Greaux-Gomez, 52 F.4th 426, 434 (1st Cir. 2022), affording the district court discretion so long as it did not make an error of law, Koon v. United States, 518 U.S. 81, 100 (1996).

#### a. Preclusion of Testimony by DRNA Lieutenants

Pérez-Greaux first argues that the district court erred in preventing him from presenting testimony from three lieutenants who worked for the Puerto Rico Natural Resources Department ("DRNA") on the Caño Tiburones Reserve near his residence. At trial, the government offered testimony from Agent Rivera that he had surveilled Pérez-Greaux's house from an empty lot belonging to the DRNA and had seen Pérez-Greaux carrying a weapon on his hip.

To rebut this testimony, Pérez-Greaux sought to introduce the testimony of three lieutenants who would testify, in

essence, that they were the only three lieutenants that were on duty to oversee the reserve, that no one requested permission to surveil Pérez-Greaux's residence from the reserve, and that even if someone had requested permission, they would not have been able to grant such permission because they were not the agents responsible for granting such requests. This testimony would show, according to Pérez-Greaux, that Agent Rivera did not actually enter the reserve to conduct surveillance, and consequently, could never have seen Pérez-Greaux with a gun on his hip. The government objected to this testimony, arguing that it constituted impeachment of a witness on a collateral matter via extrinsic evidence prohibited by Federal Rule of Evidence 608(b). The district court agreed with the government and excluded the testimony, finding that the testimony offered would go to whether or not Agent Rivera was in the lot, rather than whether he actually (from some site) saw Pérez-Greaux with the firearm. On appeal, Pérez-Greaux argues that the testimony was impermissibly excluded as collateral.

"A matter is collateral if 'the matter itself is not relevant in the litigation to establish a fact of consequence, i.e., not relevant for a purpose other than mere contradiction of the in-court testimony of the witness.'" Maldonado-Peña, 4 F.4th at 35-36 (quoting United States v. Marino, 277 F.3d 11, 24 (1st Cir. 2002)). We do not see how the district court abused its

discretion in excluding this testimony.  Testimony from these three lieutenants would not be that they never saw Agent Rivera in the lot or that Agent Rivera never saw Pérez-Greaux with a firearm. Rather, said testimony would concern whether Agent Rivera had entered the lot with or without permission, and no proffer was made that the reserve could only be entered with permission.  Given this, we agree with the district court that such a matter was collateral because it did not go directly to the issue of whether Agent Rivera actually saw Pérez-Greaux with the firearm. "[W]hether a matter is collateral or material is within the district court's discretion," id. at 36 (citation omitted), and we conclude that the district court did not abuse its discretion.[10]

b.  Preclusion of Cross-Examination of ICE Agent Miranda

Pérez-Greaux also argues that the district court abused its discretion in preventing him from cross-examining Agent Miranda regarding the defendant's post-Miranda statement that he "had no knowledge that the firearm had been modified to operate as a fully automatic handgun."  We do not dive into this claim of error because it goes directly to the mens rea count that we have concluded must be vacated and remanded for a new trial, and the

---

[10] Pérez-Greaux also argues that the district court violated his due process right to "present a defense."  However, not having developed this argument, we deem it waived.  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

ruling will likely be reconsidered. See United States v. Sasso, 695 F.3d 25, 31 (1st Cir. 2012) (commenting that, because a new trial was warranted for an erroneous jury instruction, the court would not examine some alleged trial errors).

c. Admission of Prior Bad Acts Evidence

Pérez-Greaux further argues that the district court abused its discretion in its decision to admit into evidence photographs of what appear to be bricks of cocaine, thousands of dollars in cash, various money transfer receipts, USPS tracking information, and a series of text messages, contending that the images were propensity evidence that should have been excluded under Federal Rule of Evidence 404(b) ("Rule 404(b)").

Rule 404(b) governs the admissibility of evidence of "crimes, wrongs, or acts" other than that for which the defendant is on trial. Fed. R. Evid. 404(b). Generally, such evidence is "not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Id. This is known as the forbidden "propensity inference." See, e.g., United States v. Varoudakis, 233 F.3d 113, 122 (1st Cir. 2000). However, exceptions exist. If the evidence is being offered for another purpose, such as to show "motive, opportunity, intent, preparation, plan, knowledge," et cetera, Fed. R. Evid. 404(b)(2), then such evidence is admissible if it passes a two-step analysis, Varoudakis, 233 F.3d at 118. "First,

the evidence must have 'special relevance' to an issue in the case such as intent or knowledge, and must not include 'bad character or propensity as a necessary link in the inferential chain.'" Id. (quoting United States v. Frankhauser, 80 F.3d 641, 648 (1st Cir. 1996)). Second, even if the evidence is "special[ly] relevant," id., it may still be excluded under Federal Rule of Evidence 403 ("Rule 403") "if its probative value is substantially outweighed by the danger of," among other things, unfair prejudice. Fed. R. Evid. 403. And "[i]n reviewing Rule 403 challenges, we are extremely deferential to the district court's determination." United States v. Otero-Méndez, 273 F.3d 46, 53 (1st Cir. 2001).

Pérez-Greaux argues that the district court erred when it failed to engage in the correct, two-step analysis in determining the admissibility of the photos. While it is true that the district court did not explicitly outline that it was engaging in the two-step approach, the record reveals that the court made the requisite considerations implicitly, and that is enough. See United States v. Breton, 740 F.3d 1, 14 (1st Cir. 2014) ("We give great deference to a district judge's balancing of probative value versus unfair prejudice . . . . This is true even when a judge does not expressly explain the Rule 403 balancing process on the record."). First, when the government argued that the evidence was admissible to show that Pérez-Greaux had possessed the cocaine with the intent to distribute it, the district court

agreed, noting that it would "at most" be evidence of "intent, knowledge, [etc.]." Second, the district court asked Pérez-Greaux to focus his argument on issues of "prejudice, bad faith, [and any other] evidentiary reason" to suppress the images. (Emphasis added). Such a request indicates that the court was considering step two (probative value and prejudice) in its assessment of the issue, especially since we have repeatedly held that "the absence of an express Rule 403 finding . . . does not mean the district judge failed to perform this analysis." Breton, 740 F.3d at 15; see United States v. García-Sierra, 994 F.3d 17, 29-34 (1st Cir. 2021) (explaining that while the court failed to explicitly address Rule 403 balancing, the record as a whole reveals that the court engaged in the required analysis via its questioning of counsel).

Even so, Pérez-Greaux argues that the images should not have been admitted because he was prejudiced by the last-minute disclosure of the images (the government moved to admit them the day before trial). The district court found that the delay in disclosing the evidence was not prejudicial because Pérez-Greaux could have requested a continuance and did not. We find no fault in the district court's logic and find no abuse of discretion by admitting these images.

## 2. Prosecutorial Misconduct

We now reach Pérez-Greaux's contention that the government made improper remarks at two parts of its closing

argument, which he implies poisoned the well and affected the trial's outcome. We review preserved challenges to closing arguments de novo and unpreserved challenges for plain error. United States v. González-Perez, 778 F.3d 3, 19 (1st Cir. 2015). Statements are harmful if they "so poisoned the well that the trial's outcome was likely affected, thus warranting a new trial." Id. (quoting United States v. Rodríguez, 675 F.3d 48, 62 (1st Cir. 2015)). Ultimately, we disagree with Pérez-Greaux's arguments for the reasons set forth below.

First, Pérez-Greaux takes issue with the government's emphasis on Agent Rivera's supposed description of the black firearm he saw on Pérez-Greaux's hip as "match[ing] the black pistol that was found in the closet" days later when officers executed the search warrant. The district court overruled Pérez-Greaux's objection that this was a misstatement of the evidence. Properly preserved, we review this challenge de novo. See id.

On appeal, Pérez-Greaux focuses his argument on allegations that Agent Rivera was not truthful in his testimony about seeing a gun on Pérez-Greaux's hip, and we understand his argument to be that the government improperly carried this misstatement forward into its closing argument to the jury. While our review of the record demonstrates that Agent Rivera did not specifically state that the firearm "matched" the weapon seized,

as the government stated in its closing, he did say that the firearm looked similar to his own Glock pistol and that it was indeed a Glock-brand machinegun that was eventually found. Taking context into account, it appears that in making its closing argument, the government was inviting the jury to infer that the firearm Agent Rivera says he observed matched the firearm found in the children's bedroom. While prosecutors cannot refer to facts not in evidence during closing remarks, they can ask the jury to draw reasonable inferences. United States v. Ponzo, 853 F.3d 558, 583 (1st Cir. 2017). And this inference was reasonable given the brand of the firearm recovered and its resemblance to Agent Rivera's personal weapon. As such, we cannot say that this statement was improper or that the prosecutor engaged in misconduct. See González-Perez, 778 F.3d at 19.

Moving on to his second complaint about the government's closing statement, Pérez-Greaux contends that the government also "misstated both the law and the facts and implied special knowledge amounting to personal testimony" when the prosecutor stated to the jury in rebuttal that "[d]rugs and a gun go like rice and beans, 'co[mo] arroz y habichuelas.'[11] They go together. That gun was there to protect the drugs," in attempting to make the case that the firearm was used "in furtherance of" the drug trafficking

---

[11] "Como arroz y habichuelas," is Spanish for "like rice and beans," which the government translated for the jury.

crime. Perez-Greaux did not object to this statement, so we review for plain error. On plain error review, Pérez-Greaux "must show that '(1) an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of the proceedings.'" United States v. Spencer, 873 F.3d 1, 15 (1st Cir. 2017) (alteration omitted) (quoting United States v. Kasenge, 660 F.3d 537, 541 (1st Cir. 2011)). Pérez-Greaux, however, fails to address the four prongs of plain error in his opening brief, so we deem his argument waived and say no more about it.[12] See United States v. Espinoza-Roque, 26 F.4th 32, 36 (1st Cir. 2022) (explaining that the appellant waived a "claim on appeal by failing to address the governing standard of plain error review in his opening brief").

### 3. **Franks** Hearing

We next turn to Pérez-Greaux's contention that the district court erred in denying him a Franks hearing. Under the Supreme Court's decision in Franks v. Delaware, 438 U.S. 154 (1978), a defendant may obtain an evidentiary hearing "to challenge the truthfulness of statements made by law enforcement agents in a search warrant affidavit" should the defendant make "'a

---

[12] Even if we were to look beyond Pérez-Greaux's opening brief and turn to his reply brief, there too he fails to develop his argument for plain error since he acknowledges the standard but fails to address the four prongs.

substantial preliminary showing' that: 1) the warrant affidavit contains a false statement made 'knowingly and intentionally, or with reckless disregard for the truth' and 2) that 'the allegedly false statement was necessary to the finding of probable cause.'" United States v. Hicks, 575 F.3d 130, 138 (1st Cir. 2009) (quoting Franks, 438 U.S. at 155-56). We review a district court's denial of a request for a Franks hearing for clear error. United States v. Austin, 991 F.3d 51, 57 (1st Cir. 2021) (citing United States v. Graf, 784 F.3d 1, 6 (1st Cir. 2015)). "[W]hen we are left with the definite and firm conviction that a mistake has been committed," clear error exists. Graf, 784 F.3d at 6 (quoting Hicks, 575 F.3d at 138).

On appeal, Pérez-Greaux maintains, as he did below,[13] that he was entitled to a Franks hearing because the statement made by Agent Rivera in support of the search warrant -- that on June 1, 2018, he saw Pérez-Greaux leave his residence with a pistol

---

[13] Pérez-Greaux filed a motion to suppress the evidence obtained from the search of his residence on the sole basis that Agent Rivera's affidavit supporting the search warrant application included a false statement -- that of Agent Rivera observing Pérez-Greaux with a firearm on his hip -- and that without this statement the affidavit did not establish the requisite probable cause for the issuance of the search warrant. Pérez-Greaux's motion included a request for a Franks hearing. As the parties know well, the court initially scheduled a Franks hearing, continued the hearing date a few times, and ultimately vacated the hearing date over Pérez-Greaux's objection. The district court denied the motion to suppress, adopting (over Pérez-Greaux's objection) a magistrate judge's report and recommendation that Pérez-Greaux was not entitled to a Franks hearing.

on his hip -- was false and, absent this statement, Agent Rivera's affidavit provided insufficient probable cause to issue a search warrant. In support of this Franks hearing motion, Pérez-Greaux supplied nothing beyond his own affidavit stating that, from May 29, 2018 to June 5, 2018, he had "never been outside [his] residence with any type of firearm."[14] The magistrate judge found that Pérez-Greaux "failed to make a substantial preliminary showing that he was entitled to a Franks Hearing" because he only attacked one of the factual bases within Agent Rivera's affidavit and failed to meet his burden to show the stated observation was false. He did not provide any indication that the information from the confidential informant, upon which Agent Rivera was relying, was false or unreliable in any way or show that the information was immaterial. The district court denied Pérez-Greaux's motion to suppress, finding the magistrate judge's recommendation "well-supported" and concluding that the information from the confidential informant -- on its

_____

[14] Pérez-Greaux belatedly submitted additional evidence for the court's consideration when he objected to the magistrate judge's report and recommendation, including (1) a logbook from the security company for the residential development (in which Agent Rivera averred he had observed Pérez-Greaux) purporting to show the absence of an entry for law enforcement on June 1, 2018, and (2) an affidavit from an investigator who had interviewed a security guard for the residential development, stating that the security guard did not recall law enforcement's presence at the development on June 1, 2018. The district court concluded that the evidence was "insufficient to vitiate the probable cause underlying the search warrant."

own -- "establishe[d] probable cause for the search warrant." After reviewing the record, we cannot conclude that this decision was wrong. See Graf, 784 F.3d at 6.

We begin our discussion with the first prong of the "substantial preliminary showing" test: that the "warrant affidavit contains a false statement." Hicks, 575 F.3d at 138. While Pérez-Greaux's sworn statement challenges the truthfulness of Agent Rivera's statement about what he purportedly observed, "[n]ot every challenge to an affiant's veracity will lead to an evidentiary hearing." United States v. Southard, 700 F.2d 1, 8 (1st Cir. 1983). "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." Id. (quoting Franks, 438 U.S. at 171-72). Pérez-Greaux's statement that he was not outside of his residence with any type of firearm during the relevant period amounts to what we have described in the past as a conclusory assertion. It also neither illustrates that Agent Rivera acted "knowingly and intentionally, [n]or with reckless disregard for the truth," as required by Franks. 438 U.S. at 155.

We have previously held that flat denials of allegations, like Pérez-Greaux's, fall short of the "substantial

preliminary showing" required to justify a Franks hearing because this only "set[s] up a swearing contest" -- one side has to be lying -- but a flat denial alone "do[es] not demonstrate a substantial possibility of affiant perjury." Southard, 700 F.2d at 10 (holding bare denials of the facts stated in law enforcement's affidavit "do not demonstrate a substantial possibility of affiant perjury" and therefore did not help the defendants meet the "substantial preliminary showing" of falsehood). We have also held that a defendant was unsuccessful in discrediting the affidavit made in support of a warrant to search his residence -- which had been based on a detective's statements that a confidential informant had purchased drugs from the defendant and that the police department had observed controlled buys, including one within 72 hours -- because the defendant's own statement that he had not sold drugs to anyone in the past 72 hours could not fill the "factual gap in [his] attempt to show the affidavit's inaccuracy -- and thus its knowing or reckless falsity." United States v. Moon, 802 F.3d 135, 148-50 (1st Cir. 2015).

Even if we, like the district court, consider the two exhibits first submitted to the court when Pérez-Greaux objected to the magistrate judge's report and recommendation, see supra note 14, we are still not persuaded that the district court clearly erred by concluding Pérez-Greaux failed to show Agent Rivera made

a false statement. The exhibits purport to show that Agent Rivera was lying because the security guard on duty at the time did not record or recall law enforcement entering the neighborhood on June 1, 2018. But the warrant affidavit indicates that, the two times Agent Rivera surveilled Pérez-Greaux's residence, he was in an unmarked car with tinted windows. Further, there is no indication from the proffered exhibits that law enforcement announced or were required to announce its presence to the security guards each time they entered the neighborhood. These exhibits, therefore, do not help Pérez-Greaux show Agent Rivera lied about seeing him with a firearm on June 1, 2018. See Moon, 802 F.3d at 149 (records from the American Automobile Association allegedly showing that the defendant was out of town during at least one of the controlled buys were insufficient to "discredit the affidavit's report of the controlled buys" because, at most, the records showed that the defendant was out of town for only part of the time period at issue).

Because Pérez-Greaux has not made a "substantial preliminary showing" that Agent Rivera's "warrant affidavit contain[ed] a false statement," we need not discuss the test's second prong -- whether he showed "that 'the allegedly false

statement was necessary to the finding of probable cause.'"[15] Hicks, 575 F.3d at 138 (quoting Franks, 438 U.S. at 155-56). We thus conclude that the district court was not clearly wrong to deny the Franks hearing.[16]

## III. Conclusion

For the reasons set forth above, we **affirm** Pérez-Greaux's conviction as to Count One (possession of a firearm in furtherance of a drug trafficking crime) but **vacate** his conviction as to Count Two (possession of a machinegun in

---

[15] Pérez-Greaux invites us to consider the probable cause prong of the "substantial preliminary showing" test de novo, while the government argues, after acknowledging some contradictory case law on this point, that said prong should be reviewed for clear error. We leave this discussion for another day because we need not reach the second prong, pertaining to probable cause, in this case.

[16] Pérez-Greaux's last claim is that the cumulative effect of all his asserted errors (the evidentiary rulings, inadequate jury instruction, and prosecutorial misconduct) undermined his right to a fair trial and warranted reversal of his convictions. Cumulative error exists where "a column of errors may [] have a logarithmic effect, producing a total impact greater than the arithmetic sum of its constituent parts" "even though the same compendium of errors, considered one by one, would not justify such relief." United States v. Padilla-Galarza, 990 F.3d 60, 85 (1st Cir. 2021) (alteration in original) (quoting United States v. Sepulveda, 15 F.3d 1161, 1196 (1st Cir. 1993)). With respect to the count of conviction for possession of a firearm in furtherance of a drug trafficking crime, Pérez-Greaux's claim of cumulative error goes nowhere because we have not found any errors making this count of conviction reversible. See Maldonado-Peña, 4 F.4th at 50. As to the count of conviction for possession of a machinegun in furtherance of a drug trafficking crime, we need not address the "cumulative error" claim because we agree with Pérez-Greaux's asserted instructional error, vacate his conviction, and remand for a new trial on this count.

furtherance of a drug trafficking crime) and **<u>remand</u>** for a new trial as to Count Two.